# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

MARGARET E. KELLY, et al.,

       *Plaintiffs*,

 v.

THE JOHNS HOPKINS UNIVERSITY,

       *Defendant*.

No. 1:16-cv-2835-GLR

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES, CLASS REPRESENTATIVE AWARDS AND EXPENSES

Prior to August 2016, when Class Counsel filed this lawsuit, no law firm or the Department of Labor had ever brought an excessive fee lawsuit involving a university 403(b) plan. 403(b) plans are the non-profit equivalent of 401(k) plans. Class Counsel established this new area of litigation. This followed Class Counsel pioneering excessive fee litigation in 401(k) plans, which likewise no law firm or the Department of Labor had ever brought. In short, there had been no enforcement of the law requiring that fiduciaries of 401(k) and 403(b) plans ensure the reasonableness of plan expenses. Thus, when this case was filed, no other law firm in the country was willing to devote the resources and endure the tremendous risk of nonpayment inherent in ERISA fiduciary breach actions involving 403(b) plans. In fact, similar cases have since been dismissed, another university obtained summary judgment on most claims, and the only trial in an excessive fee case involving a university's 403(b) plan resulted in a judgment for the defendant, New York University.

After more than three years of hard-fought litigation, the parties ultimately reached a settlement to resolve the claims at issue. The $14,000,000 settlement in this case is the second largest settlement in any 403(b) fee lawsuit, and only $500,000 less than the largest 403(b)

settlement in *Cassell v. Vanderbilt University*. No. 16-2086, Doc. 174 (M.D. Tenn. Oct. 22, 2019) ($14.5 million). Not only will the settlement fund provide substantial monetary compensation to Plan participants, but the affirmative relief component will provide substantial additional benefit to the Class and ensure that participants have a quality 403(b) plan for years. In achieving this result, Class Counsel leveraged their considerable experience in excessive fee litigation to achieve an efficient resolution of this matter, thereby avoiding the delay and expense of years of litigation and substantial risk of non-recovery.

Under the common fund doctrine, the Court should award Class Counsel a fee of $4,666,667 (one-third of the monetary recovery). In ERISA class actions, such as this, a one-third contingency fee is the market rate. A lodestar cross-check analysis further confirms the reasonableness of the fee request. Such an award is both appropriate and reasonable considering the risk and results in this case and, the standards established by the Fourth Circuit, and is consistent with the fee awards of other courts in similar cases. The Court should also reimburse Class Counsel's reasonable litigation expenses of $53,539.78, and grant incentive awards of $20,000 each for Class Representatives Margaret Kelly, Katrina Allen, Jeremiah Daley, Jr., Treva Boney, Tracy McCracken, Jerrell Baker, Lourdes Cordero, and Francine Lampros-Klein.

## BACKGROUND

On August 11, 2016, Plaintiffs filed this action alleging that Defendant breached its fiduciary duties and took part in prohibited transactions in operating the Johns Hopkins University 403(b) Plan. Doc. 1.[1] Prior to August 2016, no case had ever been brought by a private law firm, the Department of Labor, or any other party or entity asserting claims of fiduciary breach for

---

[1] "Doc." references are to the docket unless otherwise indicated. Capitalized terms not otherwise defined have the meanings ascribed to them in the Settlement Agreement. Doc. 84-2. A detailed discussion of the procedural history of this case is set forth in Plaintiffs' Memorandum in Support of Unopposed Motion for Preliminary Approval (Doc. 84-1 at 2–5) and the Declaration of Kurt C. Struckhoff submitted herewith.

excessive fees and imprudent investments on behalf of a university's 403(b) plan. Schlichter Decl. ¶¶19–20; Sturdevant Decl. ¶¶7–8. Plaintiffs filed an amended complaint on December 2, 2016. Doc. 27. On January 6, 2017, Defendant moved to dismiss the amended complaint. Doc. 29. On September 28, 2017, the Court granted in part and denied in part Defendant's motion to dismiss Plaintiffs' amended complaint. Doc. 45.

Following the dismissal order, the parties proceeded to discovery. The parties negotiated a stipulated confidentiality and seal order (Doc. 65) and a stipulation for discovery of hard copy documents and electronically stored information (or "ESI") (Doc. 67). Plaintiffs delivered their first requests for production of documents (consisting of four requests) on November 16, 2017. Doc. 76-1 ¶1. Plaintiffs issued a second request for production of documents (consisting of 36 requests) on May 18, 2018. *Id.* ¶2. At the time the parties reached a settlement, Defendant had completed its production of all minutes and meeting materials prepared in connection with the fiduciary committee meetings. The parties also were negotiating Defendant's ESI production at the time the case was stayed.

On November 10, 2017, Defendant moved to certify the Court's dismissal order for an immediate interlocutory appeal under 28 U.S.C. §1292(b). Doc. 56. The Court granted Defendant's motion on August 15, 2018 and stayed the case pending appeal. Doc. 81. The Fourth Circuit subsequently granted Defendant's petition for interlocutory appeal. Doc. 82.

## ARGUMENT

**I.   Class Counsel's attorneys' fee request is appropriate and reasonable.**

Class Counsel is entitled to a reasonable fee award from the common fund. Fed. R. Civ. P. 23(h); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). In determining the amount of attorneys' fees in common fund cases, "District Courts in the Fourth Circuit, and the majority of courts in other jurisdictions, use the percentage of recovery method[.]" *Decohen v. Abbasi, LLC*,

299 F.R.D. 469, 481 (D. Md. 2014); *see also Archbold v. Wells Fargo Bank, N.A.*, No. 3:13-CV-24599, 2015 WL 2476295, at *5 (S.D. W. Va. July 14, 2015) ("[T]here is a clear consensus among the federal and state courts, consistent with Supreme Court precedent, that the award of attorneys' fees in common fund cases should be based on a percentage of the recovery."). Indeed, "the current trend among the courts of appeal favors the use of a percentage method to calculate an award of attorneys' fees in common fund cases." *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 681 (D. Md. 2013) (citations and internal quotations marks omitted). This is because "the percentage method is more efficient and less burdensome than the traditional lodestar method, and offers a more reasonable measure of compensation for common fund cases." *Strang v. JHM Mortgage Sec. Ltd. Partnership*, 890 F. Supp. 499, 503 (E.D. Va. 1995); *see also Archbold*, 2015 WL 2476295, at *5 (favored percentage-of-the-fund method "derives from the recognition that the percentage of fund approach is the better-reasoned and more equitable method of determining attorneys' fees" in common fund cases).

In this case, the Settlement supports Class Counsel's fee request because, among other things, it provides substantial monetary and affirmative relief to the Class, particularly given the substantial risk of non-recovery. District courts in the Fourth Circuit analyze the following seven factors to determine the reasonableness of a percentage-of-recovery fee award:

> (1) the results obtained for the class; (2) the quality, skill, and efficiency of the attorneys involved; (3) the risk of nonpayment; (4) objections by members of the class to the settlement terms and/or fees requested by counsel; (5) awards in similar cases; (6) the complexity and duration of the case; and (7) public policy..

*Singleton*, 976 F. Supp. 2d at 682 (citations and quotation omitted). "Importantly, fee award reasonableness factors need not be applied in a formulaic way because each case is different, and in certain cases, one factor may outweigh the rest." *Id*.

4

A.  <u>Results obtained for the Class</u>

The "most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 247 (4th Cir. 2010); *McKnight v. Circuit City Stores, Inc.*, 14 F. App'x. 147, 149 (4th Cir. 2001). Here, Class Counsel obtained $14 million in monetary compensation for the Class. This is an excellent result and represents the second-largest settlement in any 403(b) excessive fee case to date. The largest university 403(b) plan settlement, also handled by Class Counsel, settled for $14.5 million. After Plaintiffs filed the instant case, several other firms pursued similar cases against other university 403(b) plan fiduciaries. This settlement is multiples of other 403(b) plan settlements handled by different law firms. *See Short v. Brown Univ.*, No. 17-318, Doc. 55 (D. R.I. Aug. 2, 2019) ($3.5 million); *Daugherty v. Univ. of Chi.*, No. 17-3736, Doc. 77 (N.D. Ill. Sept. 12, 2018), *id.*, Doc. 57-1 ($6.5 million).

Rather than "having to wait as long as a decade as other classes in similar 401(k) cases have to do," Class members will receive compensation and be able to invest their proceeds immediately in a tax-deferred vehicle, which adds more value. *Kruger v. Novant Health, Inc.*, No. 14-208, 2016 WL 6769066, at *5 (M.D. N.C. Sep. 29, 2016). The Investment Company Institute estimates that the benefit of the present value of tax deferral for 20 years is an additional 18.6%,[2] so the actual value to the Class of the monetary portion of the settlement is $16,604,000.

The Court also must consider the value of the non-monetary relief when evaluating the overall benefit to the class. *Decohen,* 299 F.R.D. at 481. "Considering the non-monetary benefits and relief created by counsel's efforts is important because it encourages attorneys to obtain

_____

[2] Peter Brady, *Marginal Tax Rates and the Benefits of Tax Deferral,* Investment Company Institute, Sept. 17, 2013, available at http://www.ici.org/viewpoints/view_13_marginal_tax_and_deferral; *Abbott v. Lockheed Martin Corp.*, No. 06-701, Doc. 497 at 37 (ECF 47) (S.D. Ill. Apr. 14, 2015)(Report of the special master)(citing ICI report).

meaningful affirmative relief." *Kruger,* 2016 WL 6769066, at *3. The affirmative future relief is extensive and provides substantial additional value to the Class. *See* Doc. 84-1 at 24–27 (Art. 10). Defendant has committed to providing this relief over a three-year settlement period, during which it will, among other things, retain an independent consultant to both evaluate the Plan's investment structure and assist the fiduciaries in conducting a competitive bidding process for recordkeeping services. Class Counsel engaged Dr. Stewart Brown, a nationally recognized economist, to provide the Court with an estimate of the economic value of the expected decrease in recordkeeping fees following the competitive bidding process. Dr. Brown estimates that over a five-year period, Plan participants will achieve fee savings of at least $18,162,732 as a result of the competitive bidding process. Brown Decl. ¶¶1–9. The present value of these savings is $16,605,872. *Id*. ¶¶10–11.

The non-monetary relief provisions of the Settlement provide significantly enhanced value beyond the value of the Plan consultant and competitive bidding process. These provisions will, among other things, enable participants to be better informed about their investment options, and will also allow them to avoid undue pressure to purchase investment products outside the plan. Recent publications have noted the significance of the non-monetary relief provision in this case, and have noted that these provisions help protect against potential cross-selling by third-party service providers.[3]

Considering the monetary value of the Settlement, plus the value of tax deferral and anticipated future recordkeeping fee savings resulting from competitive bidding, the Settlement is valued at $34,766,732. Additional non-monetary benefits, including those related to improved

---

[3] Greg Iacurci, *Cross-selling gaining prominence in retirement-plan lawsuits*, Investment News (Nov. 6, 2019 4:41 PM), https://www.investmentnews.com/article/20190812/FREE/190819996/cross-selling-gaining-prominence-in-retirement-plan-lawsuits; *see also Informed Investor Advisory: Cross-Selling*, North American Securities Administrators Association (Nov. 6, 2019), https://www.nasaa.org/51426/informed-investor-advisory-cross-selling/?qoid=investor-advisories.

investment monitoring practices and restrictions on cross-selling, further increase the value of the Settlement. Class Counsel's requested fee is less than 7.45% of the total benefit to the Class.

   B.  <u>Quality, skill, and efficiency of the attorneys involved</u>

Class Counsel is not only highly experienced in handing ERISA class actions involving 401(k) and 403(b) plans, but "pioneer[ed] . . . the field of retirement plan litigation." *Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 WL 4398475, at *1 (S.D. Ill. July 17, 2015). Class Counsel is the "preeminent firm" in excessive fee litigation having "achieved unparalleled results on behalf of its clients" in the face of "enormous risks." *Nolte v. Cigna Corp.,* No. 07-2046, 2013 WL 12242015, at *3–4 (C.D. Ill Oct. 15, 2013). Class Counsel are "experts in ERISA litigation," *Krueger v. Ameriprise Fin., Inc*., No. 11-2781, 2015 WL 4246879, at *2 (D. Minn. July 13, 2015) (citation omitted), and "highly experienced," *In re Northrop Grumman Corp. ERISA Litig*., No. 06-6213, 2017 WL 9614818, at *4 (C.D. Cal. Oct. 24, 2017). The firm also obtained the only victory for an ERISA excessive fee case in the Supreme Court, which in 2015 unanimously held that an ERISA fiduciary has a continuing duty to monitor plan investments and remove imprudent ones. *Tibble v. Edison Int'l*, 135 S.Ct. 1823, 1828–29 (2015).

Courts across the country have recognized the reputation, skill, and determination of Class Counsel in pursuing relief on behalf of retirement plan participants. In addressing the efforts of Class Counsel, Chief Judge Osteen of the Middle District of North Carolina, noted as follows:

> Class Counsel's efforts have not only resulted in a significant monetary award to the class but have also brought improvement to the manner in which the Plans are operated and managed which will result in participants and retirees receiving significant savings in the coming four years.

*Kruger,* 2016 WL 6769066, at *3. Recently, on June 24, 2019, U.S. District Judge Eagles "recognized the experience, reputation, and ability" of Plaintiffs' counsel and found that the firm "demonstrated diligence, skill, and determination in this matter and, more generally, in an area of

law in which few attorneys and law firms are willing or capable of practicing." *Clark v. Duke Univ.*, No. 16-1044, 2019 WL 2579201, at *3 (M.D. N.C. June 24, 2019). In another ERISA class action from earlier this year, Judge Eagles recognized the "skill and determination" of Class Counsel and noted that "[i]t is unsurprising that only a few firms might invest the considerable resources to ERISA class actions such as this, which require considerable resources and hold uncertain potential for recovery." *Sims v. BB&T Corp.,* No. 15-732, 2019 WL 1993519, at *3 (M.D. N.C. May 6, 2019).

Judge McDade of the Central District of Illinois, speaking of Class Counsel, observed that achieving a favorable result in this type of case required extraordinary efforts because the "litigation entails complicated ERISA claims". *Martin v. Caterpillar, Inc*., No. 07-1009, 2010 WL 3210448, at *2 (C.D. Ill. Aug. 12, 2010). Judge Baker from the same district also found:

> The law firm Schlichter, Bogard & Denton is the leader in 401(k) fee litigation . . . [T]he fee reduction attributed to Schlichter, Bogard & Denton's fee litigation and the Department of Labor's fee disclosure regulations approach $2.8 billion in annual savings for American workers and retirees.

*Nolte,* 2013 WL 12242015, at *2 (internal citations omitted).

Numerous other judges have commended the work of Class Counsel in ERISA matters. U.S. District Judge Patrick Murphy stated:

> Schlichter, Bogard & Denton's work throughout this litigation illustrates an exceptional example of a private attorney general risking large sums of money and investing many thousands of hours for the benefit of employees and retirees. . . . Litigating the case required Class Counsel to be of the highest caliber and committed to the interests of the participants and beneficiaries of the General Dynamics 401(k) Plans.

*Will v. Gen. Dynamics Corp*., No. 06-698, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010).

U.S. District Judge David Herndon similarly stated as follows:

> Litigating this case against formidable defendants and their sophisticated attorneys required Class Counsel to demonstrate extraordinary skill and determination. Schlichter, Bogard & Denton and lead attorney Jerome

Schlichter's diligence and perseverance, while risking vast amounts of time and
money, reflect the finest attributes of a private attorney general.

*Beesley v. Int'l Paper Co*., No. 06-703, 2014 WL 375432, at *2 (S.D. Ill. Jan. 31, 2014).

After recognizing "their persistence and skill of [Class Counsel's] attorneys," Judge Nancy

Rosenstengel similarly noted:

> Class Counsel has been committed to the interests of the participants and
> beneficiaries of Boeing's 401(k) plan in pursuing this case and several other
> 401(k) fee cases of first impression. The law firm Schlichter, Bogard & Denton
> has significantly improved 401(k) plans across the country by bringing cases such
> as this one[.]

*Spano v. Boeing Co.*, No. 06-743, 2016 WL 3791123, at *3 (S.D. Ill. Mar. 31, 2016).

In awarding attorneys' fees to Class Counsel after the first trial of an ERISA 401(k)

excessive class action, the district court concluded that "Plaintiffs' attorneys are clearly experts

in ERISA litigation." *Tussey v. ABB, Inc*., No. 06-4305, 2012 WL 5386033, at *3 (W.D. Mo.

Nov. 2, 2012). The Court later emphasized the significant contributions Class Counsel have

made to the field of ERISA litigation, including by educating the Department of Labor and

federal courts about the importance of monitoring fees in retirement plans.

> Of special importance is the significant, national contribution made by the
> Plaintiffs whose litigation clarified ERISA standards in the context of investment
> fees. The litigation educated plan administrators, the Department of Labor, the
> courts and retirement plan participants about the importance of monitoring
> recordkeeping fees and separating a fiduciary's corporate interest from its
> fiduciary obligations.

*Tussey v. ABB, Inc.,* No. 06-4305, 2015 WL 8485265, at *2 (W.D. Mo. Dec. 9, 2015). Class

Counsel's experience and resources expended in those matters contributed to efficiently

litigating and resolving this case. *See Ramsey v. Phillips N. Am. LLC*, No. 18-1099, Doc. 27 at 6–

7 (N.D. Ill. Oct. 15, 2018) ("This Court believes that the early settlement in this case was reached

due to Schlichter Bogard & Denton's established reputation"). In *Ramsey*, the court cited support

by a nationally recognized expert in pension rights who opined that Class Counsel's record of success and perseverance enabled the class to obtain an early favorable settlement, and that no other private law firm could have obtained the early relief in the case. *Id*. at 6 (*citing* Declaration of Karen Ferguson, Director of non-profit Pension Rights Center [Doc. 21-4 ¶¶20-22, 24]). The same is true here.

C.  Risk of nonpayment

Class Counsel litigated this matter on a contingent basis with no guarantee of recovery. Class Counsel entered into contingency fee agreements with each of the Named Plaintiffs for one-third of any monetary recovery plus reimbursement of expenses. Schlichter Decl. ¶33. The Named Plaintiffs would have been unable to pursue this litigation other than on a contingency fee basis. Schlichter Decl. ¶32; Sturdevant Decl. ¶13. As noted above, when this case was filed, no law firm or the Department of Labor had ever brought an excessive fee lawsuit involving a university 403(b) plan. As such, no law firm was willing to devote the resources and endure the risk of nonpayment in novel ERISA fiduciary breach actions involving a 403(b) plan.

Only one 403(b) excessive fee case has gone to trial in history. *Sacerdote v. New York Univ.*, 328 F.Supp.3d 273 (S.D. N.Y. 2018). That trial, handled by Class Counsel, occurred in April 2018. Judgment was entered on July 31, 2018, finding wholly in favor of New York University and against the plaintiffs. The district court in *Sacerdote* found that the 403(b) plan fiduciaries did not breach their duty of prudence despite failing to consolidate recordkeepers, failing to conduct more frequent competitive bidding processes, and maintaining the CREF Stock and TIAA Real Estate Accounts. *Id.* at 297–99, 312–15; Doc. 109 (notice of decision). Similar allegations of imprudence are also made in this case.

The difficulty in successfully obtaining a judgment is further illustrated by dismissals of similar excessive fee allegations involving 403(b) plans. *See Divane v. Nw. Univ.,* No. 16-8157,

2018 WL 2388118 (N.D. Ill. May 25, 2018); *Wilcox v. Georgetown Univ.,* No. 18-422, 2019 WL 132281 (D. D.C. Jan. 8, 2019); *Davis v. Wash. Univ. in St. Louis*, No. 17-1641, 2018 WL 4684244 (E.D. Mo. Sept. 28, 2018). The Settlement in this case came at a time when the Fourth Circuit had accepted an interlocutory appeal of the denial of Defendant's motion to dismiss. This was an unprecedented event that dramatically increased the risk that the Class would receive no recovery at all if the dismissal order was reversed.

The risk of non-payment does not end at the dismissal phase, as illustrated by a recent summary judgment ruling in the Southern District of New York. *Cunningham v. Cornell Univ.*, No. 16-6525, 2019 WL 4735876 (S.D. N.Y. Sep. 27, 2019). Moreover, even if a successful judgment is obtained after a trial, recovery is far from certain. In *Tussey v. ABB, Inc.*, Class Counsel tried the first full trial of any 401(k) excessive fee case in January 2010, which resulted in a favorable judgment in March 2012. No. 06-4305, 2012 WL 1113291 (W.D. Mo. Mar. 31, 2012). At the time of the judgment, the case had been pending for over five years. After two separate appeals to the Eighth Circuit Court of Appeals and multiple remands to the district court, after more than twelve years of litigation, the parties reached a settlement on March 28, 2019. *Tussey*, Doc. 859. This came after over 24,000 attorney hours were invested by Class Counsel. *Tussey,* Doc. 860 at 7.

*Tibble v. Edison International* is another example of a case handled by Class Counsel illustrating the extreme difficulty in obtaining a successful recovery. This case was the first partial trial of a 401(k) excessive fee case. In 2010, the court entered a limited judgment in favor of plaintiffs on certain claims that survived summary judgment. *Tibble v. Edison Int'l*, No. 07-5359, 2010 WL 2757153 (C.D. Cal. July 8, 2010). Following the bench trial, the case featured an appeal to the Ninth Circuit, a certiorari petition by plaintiffs, a unanimous successful decision

before the Supreme Court, a remand to the Ninth Circuit panel, a successful unanimous *en banc* reversal of the panel decision, a remand to the district court, and still another appeal to the Ninth Circuit, which is currently pending approximately twelve years after the case was filed. No. 07-5359, 2017 WL 3523737 (C.D. Cal. Aug. 16, 2017).

Obtaining the $14 million settlement in this case required Class Counsel to remain committed to the litigation and the significant risk of nonpayment following the judgment in *Sacerdote*, other dismissals in similar 403(b) litigation, and the grant of Defendant's interlocutory appeal by the Fourth Circuit. Rather than having to wait as long as a decade, like the class members in other excessive fee cases discussed above, Class members will receive compensation and be able to invest their proceeds immediately in a tax-deferred vehicle and enjoy the future benefits of the non-monetary relief.

D.   Objections

On November 1, 2019, notice of the proposed Settlement and Class Counsel's request for attorneys' fees was sent to class members. No objections to the Settlement have been made to date.

E.   Awards in similar cases

In complex ERISA class actions, such as this, a one-third contingency fee is routinely awarded in cases handled by Class Counsel.

| Case | Fee % |
|---|---|
| *Cassell v. Vanderbilt Univ.*, No. 16-2086, Doc. 174 (M.D. Tenn. Oct. 22, 2019) | 33.33% |
| *Tussey v. ABB, Inc.,* No. 06-4305-NKL, Doc. 870 (W.D. Mo. August 16, 2019) | 33.33% |
| *Sims v. BB&T Corp.,* No. 15-1705, 2019 WL 1993519 (M.D. N.C. May 6, 2019) | 33.33% |
| *Clark v. Duke*, No. 16-1044, 2019 WL 2579201 (M.D. N.C. June 24, 2019) | 33.33% |
| *Ramsey v. Philips N.A.,* No. 18-1099, Doc. 27 (S.D. Ill. Oct. 15, 2018) | 33.33% |

| Case | Fee % |
|---|---|
| *In re Northrop Grumman Corp. ERISA Litig.*, No. 06-6213, 2017 WL 9614818 (C.D. Cal. Oct. 24, 2017) | 33.33% |
| *Gordan v. Mass. Mut. Life Ins. Co.*, No. 13-30184, 2016 WL 11272044 (D. Mass. Nov. 3, 2016) | 33.33% |
| *Kruger v. Novant Health, Inc.*, No. 14-208, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016) | 33.33% |
| *Spano v. Boeing Co.*, No. 06-743, 2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) | 33.33% |
| *Abbott v Lockheed Martin Corp.*, No. 06-701, 2015 WL 4398475 (S.D. Ill. July 17, 2015) | 33.33% |
| *Krueger v. Ameriprise Fin., Inc.*, No. 11-2781, 2015 WL 4246879 (D. Minn. July 13, 2015) | 33.33% |
| *Beesley v. Int'l Paper Co.*, No. 06-703, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) | 33.33% |
| *Nolte v. Cigna Corp.*, No. 07-2046, 2013 WL 12242015 (C.D. Ill. Oct. 15, 2013) | 33.33% |
| *George v. Kraft Foods Global, Inc.*, Nos. 08-3899, 07-1713, 2012 WL 13089487 (N.D. Ill. June 26, 2012) | 33.33% |
| *Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) | 33.33% |
| *Martin v. Caterpillar Inc.*, No. 07-1009, 2010 WL 11614985 (C.D. Ill. Sept. 10, 2010) | 33.33% |

Courts in this District also routinely approve fee awards of one-third of the common fund or more, even in instances where the class recovery runs into the hundreds of millions of dollars. *See, e.g., Decohen,* 299 F.R.D. at 483 (one-third attorney fee); *In re Titanium Dioxide Antitrust Litig.*, No. 10-318-RDB, 2013 WL 6577029, at *1 (D. Md. Dec. 13, 2013) (awarding one-third fee from $163.5 million common fund); *Muga v. Branch Banking & Trust Co.*, No. 10-890-PWG, Doc. 54 at 6 (D. Md. Aug. 22, 2011) (awarding 40% fee of a common fund); *McDaniels v. Westlake Servs., LLC*, No. 11-1837, 2014 WL 556288, at *13 (D. Md. Feb. 7, 2014) (one-third attorney fee).

ERISA class action litigation is inherently complex. *Kruger*, 2016 WL 6769066, at *2–3; *see also* Sturdevant Decl. ¶10. Cases are considered more complex where the applicable laws are new, changing, or unclear. *See Goldenberg v. Marriott PLP Corp.*, 33 F.Supp.2d 434, 439 (D.

13

Md. 1998) (finding the case was complex based on a "regulatory climate in flux."). This "rapidly evolving" area of law places demands on counsel that are "complex and require the devotion of significant resources." *In re Wachovia Corp. ERISA Litig.*, No. 09-262, 2011 WL 5037183, at *4 (W.D. N.C. Oct. 24, 2011). Excessive fee litigation "entails complicated ERISA claims" and "novel questions of law." *Martin*, 2010 WL 3210448, at *2; *Tussey*, 2012 WL 5386033, at *3. Few firms "are capable of handling this type of national litigation." *Abbott,* 2015 WL 4398475, at *3; Schlichter Decl. ¶¶24, 35–36; Sturdevant Decl. ¶10.

As demonstrated in *Sacerdote*, *Tibble,* and *Cunningham*, successfully obtaining a judgment in these actions is extraordinarily difficult. It requires counsel to risk very significant amounts of time and money "in the face of vigorous resistance by employers." *Ramsey,* Doc. 27 at 2; *see also* Schlichter Decl. ¶¶35–36; Sturdevant Decl. ¶¶10–11. Other cases handled by Class Counsel demonstrate the substantial sums that must be advanced to obtain a successful recovery. *See Spano*, 2016 WL 3791123, at **1, 4 ($1.8 million in expenses); *Abbott,* 2015 WL 4398475, at **1, 4 ($1.6 million in expenses); *Beesley,* 2014 WL 375432, at **1, 3 ($1.6 million in expenses); *In re Northrop Grumman ERISA Litig.,* 2017 WL 9614818, at *6 ($1.2 million in expenses); *George,* 2012 WL 13089487, at **1, 4 ($1.5 million in expenses); *Kanawi v. Bechtel Corp.,* No. 06-5566, Doc. 828 at 4–5 (N.D. Cal. Mar. 1, 2011) ($1.5 million in expenses).

The issues in this case were hotly contested. After Plaintiffs filed their amended complaint (Doc. 27), Defendant moved to dismiss. Doc. 29. After extensive briefing, including multiple supplemental notices of authority, the Court denied in part and granted in part Defendant's motion to dismiss. Doc. 45. Plaintiffs moved for reconsideration of the dismissal order on October 12, 2017 (Doc. 51), which Defendant opposed. Doc. 53. Plaintiffs' motion was denied on August 14, 2018. Doc. 80. Defendant then moved to certify the Court's dismissal order for an

14

immediate interlocutory appeal. Doc. 56. The Court granted Defendant's motion on August 15, 2018 and stayed the case pending appeal. Doc. 81. The Fourth Circuit subsequently granted Defendant's petition for interlocutory appeal on September 18, 2018. Doc. 82.

Prior to the stay, the parties engaged in significant discovery. *See* Doc. 84-1 at 3–4. These efforts resulted in the production of approximately 10,000 pages of documents. Struckhoff Decl. ¶15. Class Counsel was required to devote the time and resources to analyze these documents to further support their claims. This review resulted in Plaintiffs moving to file a second amended complaint to incorporate additional detail. Doc. 76. In sum, this was a "complex" case, which strongly weighs in favor of granting Class Counsel's fee request.

F.  Public policy

Public policy additionally supports Class Counsel's fee. This type of litigation provides a "significant, national contribution" helping to "clarify[y] ERISA standards" and "educate[] plan administrators, the Department of Labor, the courts and retirement plan participants about the importance of monitoring recordkeeping fees and separating a fiduciary's corporate interest from its fiduciary obligations." *Tussey,* 2015 WL 8485265, at *2. "The public benefits when capable and seasoned counsel undertake private action to enforce [federal] laws." *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 263 (E.D. Va. 2009). Additionally, the non-monetary relief in this case helped draw attention to the issue of cross-selling in retirement plans. *See supra* n.3. As discussed above, Class Counsel devotes substantial time and resources to pursue fiduciary breach claims on behalf of retirement plan participants. These efforts have contributed to billions of dollars in fee savings for plan participants. *Nolte,* 2013 WL 12242015, at *2.

**II.    A lodestar cross-check confirms the reasonableness of Class Counsel's request.**

"Given that courts in the Fourth Circuit approve of the percentage-of-fund method for awarding fees in common fund cases, '[i]t is not necessary for the Court to conduct a lodestar

analysis[.]'" *Kruger*, 2016 WL 6769066, at *4 (citation omitted). However, courts have used a lodestar "cross-check" to confirm that the percentage award is fair and reasonable by determining the hours reasonably expended and then multiplying that amount by the reasonable hourly rate. *Id.* "The hourly rate should be in line with the market rate for 'similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Id.* (citation omitted). The Court does not need to "'exhaustively scrutinize[ ]'" the hours documented by counsel and 'the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case.'" *Krakauer,* 2018 WL 6305785, at *5 (citation omitted). Class Counsel need only submit documentation appropriate to meet the burden establishing an entitlement to an award, not to satisfy "green-eyeshade accountants." *Fox v. Vice,* 131 S.Ct. 2205, 2216 (2011).

ERISA litigation, such as this, involves a national market because the number of plaintiff's firms who have the necessary expertise and are willing take the risk and devote the resources to litigate complex claims is small. *Abbott*, 2015 WL 4398475 at 3; Schlichter Decl. ¶¶20, 24; Sturdevant Decl. ¶¶10–11. Class Counsel has brought actions across the country defended by national firms with ERISA expertise, such as opposing counsel in this case. Schlichter Decl. ¶¶17, 37. Thus, the relevant hourly rate is the "nationwide market rate". *Kruger*, 2016 WL 6769066, at *4; *Clark,* No. 16-1044, Doc. 165 at 5, 8; *Sims,* 2019 WL 1993519, at *2; *Ramsey,* Doc. 27 at 8; *Beesley,* 2014 WL 375432, at *3; *Abbott,* 2015 WL 4398475, at *2; *Tussey,* 2015 WL 8485265, at *7.

Class Counsel spent 2,566.10 hours of attorney time and 249.60 hours of non-attorney time on this matter to date. Schlichter Decl. ¶39; Struckhoff Decl ¶6.[4] As recently as October 2019, Class Counsel's reasonable hourly rates have been approved in similar ERISA class action

---

[4] A detailed summary of Class Counsel's efforts in this litigation are set forth in the Struckhoff Declaration. If the Court deems it necessary, Class Counsel is willing submit their time entries for in camera review, since they reflect sensitive work product of their attorneys.

litigation. *Cassell*, No. 16-2086, Doc. 174. The approved hourly rates are as follows: for attorneys with at least 25 years of experience, $1,060 per hour; for attorneys with 15–24 years of experience, $900 per hour; for attorneys with 5–14 years of experience, $650 per hour; for attorneys with 2-4 years of experience, $490 per hour; and for Paralegals and Law Clerks, $330 per hour. *Id*. at 3. Other district courts in the Fourth Circuit similarly approved these hourly rates. *see also Clark*, No. 16-1044, 2019 WL 2579201, at *3; *Sims,* 2019 WL 1993519, at *3.

These reasonable hourly rates were independently verified by a recognized expert in attorney fee litigation who opined that Class Counsel's requested rates were reasonable based on rates charged by national attorneys of equivalent experience, skill, and expertise in complex class action litigation. *Ramsey,* Doc. 27 at 9 (*citing* Declaration of Sanford Rosen [Doc. 21-3 ¶52]). In light of the close similarities between the fiduciary breach claims in those cases and this one, Class Counsel being the same, and the recency of the decisions, the same rates are appropriate. *See Kruger,* 2016 WL 6769066, at *4.

Using these rates, the lodestar is $1,907,379, creating a multiplier of 2.45. This is well within the range of multipliers approved by district courts in the Fourth Circuit. *See, e.g., Kruger,* 2015 WL 6769066, at *5 (approved 3.69 multiplier and noting that courts have routinely approved multipliers of 4.5 or higher); *Deloach v. Philp Morris Co.*, No. 00-1235, 2003 WL 23094907, at *11 (M.D. N.C. Dec. 19, 2003) (approving 4.45 lodestar multiplier); *Dechoen*, 299 F.R.D. at 483 (approving 3.5 lodestar multiplier); s*ee also* Newberg on Class Action § 14.6 (4th ed. 2009) ("Multiples ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied."). This Court recently approved a common fund fee award with a 3.5 lodestar multiplier. *Freckleton v. Target Corp.*, No. 14-807-GLR, Doc. 149 (D. Md. Dec. 11, 2017) (approving multiplier noted in Doc. 145-1 at 22). This demonstrates the reasonableness of

the requested fee award.

**III.    Class Counsel's request is additionally reasonable when the twelve *Barber* factors are considered.**

Courts in the Fourth Circuit also weigh the twelve factors set forth in *Barber v. Kimbrell's* in

evaluating the reasonableness of attorneys' fees. *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226

n.28 (4th Cir. 1978). These factors are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or the circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case within the legal community in which the suite arose; (11) the nature and length of the professional relationship between attorney and clients; and (12) attorney's fees awards in similar cases.

*Id.* Factors 1–3, 5, 9, and 12 overlap with the seven-factor test and the lodestar discussion. The

remaining factors are discussed below.

>   A.   The attorneys' opportunity costs in pressing the instant litigation, the attorneys'
>        expectations at the outset, and the time limitations imposed by the client or
>        circumstances (Factors 4, 6 and 7)

The decision to pursue this case, advance substantial costs and commit substantial

resources and thousands of attorney hours to obtain a successful recovery materially

impacted Class Counsel's ability to handle "other simpler and less risky matters."

*Krakauer,* 2018 WL 6305785, at *4; Schlichter Decl. ¶¶35–36.

At the outset of this litigation, Class Counsel fully expected this case to be vigorously

defended by a defendant with sophisticated counsel. Schlichter Decl. ¶¶35–36; *Smith v.*

*Krispy Kreme Doughnut Corp.*, No. 05-187, 2007 WL 119157, at *2 (M.D. N.C. Jan. 10,

2007) ("Additional skill is required when the opponent is a sophisticated corporation with

sophisticated counsel"). Complex ERISA class actions, such as this, are generally

defended with a "blank check" for defense costs. Sturdevant Decl. ¶11. *Tussey v. ABB, Inc.* represents a prime example of this. In that case, the two corporate defendants had 15 or more lawyers present in the courtroom throughout the month-long trial. Schlichter Decl. ¶36. The two defendants' legal fees in that case alone exceeded $42 million through the trial, which ended in January 2010. *Tussey,* 2015 WL 8485265, at *6. Nine more years of attorneys' fees were subsequently incurred by the defendants.

This lawsuit confirmed Class Counsel's expectations of a vigorous defense. Defendant retained a sophisticated global law firm, which filed a comprehensive motion to dismiss, opposed Plaintiffs' notice of supplemental authority, filed its own notices of supplemental authority, opposed Plaintiffs' motion to file a second amended complaint, and successfully moved to certify the motion to dismiss order for immediate appeal. These actions unquestionably demonstrate that Defendant mounted a strong defense at each stage of the litigation.

Class Counsel also knew it would have to incur substantial expenses. Schlichter Decl. ¶¶35–36. In the protracted *Tussey* and *Tibble* litigation, Class Counsel incurred very substantial out-of-pocket expenses for over a decade. *See Tussey,* 2012 WL 5386033, at *1 (over $2 million in expenses); *Tibble*, Doc. 576-1 at 1 (expert witness fees alone of almost $1 million). The same is true here. Class Counsel devoted thousands of hours to litigate the claims and advanced over $50,000 in litigation expenses, all at risk.

The Settlement also came at a time when the Fourth Circuit had accepted an interlocutory appeal of the denial of Defendant's motion to dismiss. Defendant argued that the law related to Plaintiffs' claims was unsettled and conflicting. Doc. 56-1 at 10. Like *Tussey* and *Tibble*, the aggressive defense presented the possibility that Class Members would have to wait over a decade to receive any compensation. Alternatively, the Fourth Circuit may have sided with the

decisions of other courts and found in favor of Defendant.

B.   The amount in controversy and the results obtained (Factor 8)

Class Counsel obtained $14 million in monetary compensation for the Class. This is an excellent result and the second-largest 403(b) retirement plan settlement. Any recovery at all was uncertain. This uncertainty is particularly shown by the adverse findings in *Sacerdote* on similar claims, including that court's rejection of the plaintiffs' experts and complete rejection of those plaintiffs' claims on the CREF Stock Account and the TIAA Real Estate Account, which Defendant asserted here were the only investment claims remaining after the motion to dismiss order. Doc. 79. While Plaintiffs disputed that their performance loss claims were limited to these two funds, if the *Sacerdote* result were followed, Plaintiffs' recovery as to these two funds would have been zero. Plaintiffs' recordkeeping fee claim, furthermore, was similar to that in *Sacerdote*, where the court wholly rejected it.

C.   The undesirability of the case within the legal community in which the suite arose (Factor 10)

As detailed above, in August 2016 Class Counsel became the first law firm in the country to file an excessive fee lawsuit involving a university's 403(b) plan. No law firm was willing to devote the resources and endure the tremendous risk of nonpayment inherent in this litigation. This followed Class Counsel pioneering ERISA excessive fee litigation involving 401(k) plans, which likewise no law firm or the Department of Labor had ever brought. Indeed, at the time that Class Counsel first filed an excessive fee lawsuit, "no other firm was willing to accept such a daunting challenge on this case at *any* rate[.]" *Nolte,* 2013 WL 12242015, at *3; *Ramsey,* Doc. 27 at 3; *see also* Schlichter Decl. ¶¶20, 24; Sturdevant Decl. ¶¶7–8. Even now, few law firms have the necessary expertise and are willing take the risk and devote the substantial resources necessary, all at risk of nonpayment, to litigate these complex ERISA claims. *Abbott*, 2015 WL

4398475, at *3; Schlichter Decl. ¶¶20, 24; Sturdevant Decl. ¶¶8–10. Class Counsel's willingness to bear the risk of prosecuting this action and the lack of interest by others in the legal community supports the reasonableness of their fee request. *Phillips v. Triad Guar. Inc.,* No. 09-71, 2016 WL 2636289, at *7 (M.D. N.C. May 9, 2016); *Krispy Kreme*, 2007 WL 119157, at *3.

D. The nature and length of the professional relationship between attorney and client (Factor 11)

Class Counsel did not have a professional relationship with any of the Named Plaintiffs prior to this litigation, which supports the requested fee award. Schlichter Decl. ¶34; *Krispy Kreme,* 2007 WL 119157, at *3.

## IV.     The Court should award reimbursement of Class Counsel's litigation expenses.

Class Counsel is entitled to reimbursement of litigation expenses of $53,539.78 advanced in prosecuting this case. Fed. R. Civ. P. 23(h). Reimbursable expenses include expert fees, travel, conference telephone, postage, delivery services, and computerized legal research. Alba Conte, 1 Attorney Fee Awards §2:19 (3d ed. 2004). That is what the expenses submitted here cover. *See* O'Gorman Decl. ¶2.[5] The expenses incurred in this case were reasonable and necessary.  *In re Mid-Atlantic Toyota Antitrust Litig.*, 605 F. Supp. 440, 448 (D. Md. 1984).

Class Counsel brought this case without guarantee of reimbursement or recovery. There was a strong incentive to limit costs. Given the complexity of this case, the costs incurred are much lower with what would be expected in a case of this magnitude that was litigated for years. *See Spano,* 2016 WL 3791123, at **1 4 ($1.8 million in expenses); *Abbott,* 2015 WL 4398475, at **1, 4 ($1.6 million in expenses); *Beesley,* 2014 WL 375432, at **1, 3 ($1.6 million in expenses); *In re Northrop Grumman ERISA Litig.,* 2017 WL 9614818, at *6 ($1.2 million in

---

[5] Class Counsel is not seeking reimbursement for expenses paid for local counsel's time.

expenses); *George,* 2012 WL 13089487, at **1, 4 ($1.5 million in expenses); *Kanawi*, Doc. 828 at 4–5 ($1.5 million in expenses).

## V.     The Court should approve case contribution awards for the Named Plaintiffs.

"As part of a class action settlement, named plaintiffs are eligible for reasonable incentive payments." *Decohen*, 299 F.R.D. at 483 (internal citations and quotations omitted). "A substantial incentive award is appropriate in [a] complex ERISA case given the benefits accruing to the entire class in part resulting from [named plaintiff's] efforts." *Savani v. URS Prof'l Solutions LLC*, 121 F. Supp.3d 564, 577 (D. S.C. 2015). In this case, the Named Plaintiffs provided invaluable assistance to Class Counsel. *See* Struckhoff Decl. ¶¶9–10. Each Named Plaintiff is a current or former employee of Johns Hopkins University. Doc. 76-3 at ¶¶13–20. They risked their reputation and alienation from employers "in bringing an action against a prominent [university] in their community." *Kruger,* 2016 WL 6769066, at *6; *see also* Struckhoff Decl. ¶9.

A case contribution award of $20,000 each for the eight Class Representatives, which when combined represents just over one percent of the Settlement Fund (and far less than one percent when considering the additional future benefits of the Settlement), is reasonable and appropriate given the contributions of the Class Representatives to the case. This amount is consistent with awards in similar excessive fee settlements. *See Kruger,* 2016 WL 6769066, at *6; *Abbott*, 2015 WL 4398475, at *4; *Krueger*, 2015 WL 4246879, at *4; *Beesley*, 2014 WL 375432, at *4; *Will*, 2010 WL 4818174, at *4 (all awarding $25,000 to each named plaintiff).

## CONCLUSION

This Court should grant Plaintiffs' Motion.

November 8, 2019                              Respectfully submitted,

                                             _____
                                                          /s/
                                             SCHLICHTER BOGARD & DENTON LLP
                                             Jerome J. Schlichter (pro hac vice)
                                             Michael A. Wolff (pro hac vice)
                                             Kurt C. Struckhoff (pro hac vice)
                                             100 South Fourth Street, Suite 1200
                                             St. Louis, MO 63102
                                             Phone: (314) 621-6115
                                             Fax: (314) 621-5934
                                             jschlichter@uselaws.com
                                             mwolff@uselaws.com
                                             kstruckhoff@uselaws.com

                                             and

                                             Gregory P. Care, Bar No. 29040
                                             BROWN, GOLDSTEIN & LEVY, LLP
                                             120 E. Baltimore Street, Suite 1700
                                             Baltimore, Maryland 21202
                                             Telephone: (410) 962-1030
                                             Fax: (410) 385-0869
                                             gpc@browngold.com

                                             *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2019, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the attorneys of record.

                                             _____
                                                          /s/