**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**

MARGARET E. KELLY, et al.,

                        *Plaintiffs*,

 v.

THE JOHNS HOPKINS UNIVERSITY,

                        *Defendant*.

No. 1:16-cv-2835-GLR

**DECLARATION OF JEROME J. SCHLICHTER**

I, Jerome J. Schlichter, declare as follows:

1.      I am the founding and managing partner of the law firm of Schlichter, Bogard & Denton, LLP, Class Counsel for Plaintiffs in the above-referenced matters. This declaration is submitted in support of Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses, and Case Contribution Awards for Named Plaintiffs. I am familiar with the facts set forth below and able to testify to them.

2.      I received my Bachelor's degree in Business Administration from the University of Illinois in 1969, with honors and was a James Scholar. I received my Juris Doctorate from the University of California at Los Angeles (UCLA) Law School in 1972, where I was an Associate Editor of UCLA Law Review. I am licensed to practice law in the states of Illinois, Missouri, and California and am admitted to practice before the Supreme Court of the United States, the Second, Third, Fourth, Fifth, Seventh, Eighth and Ninth Circuit Courts of Appeals and numerous U.S. District Courts. I have also been an Adjunct Professor teaching trial practice at Washington University School of Law, and repeatedly selected by my peers for the list of The Best Lawyers in America.

3.      Through over 40 years of practice, I have handled, on behalf of plaintiffs,

substantial personal injury, civil rights class actions, mass torts and class action fiduciary breach

litigation under the Employee Retirement Income Security Act (ERISA), on behalf of

participants in large 401(k) and 403(b) plans. In 2014, I was ranked number 4 in a list of the 100

most influential people nationally in the 401(k) industry in the industry publication 401(k) Wire.

Examples of class action cases I have successfully handled include: *Brown v. Terminal Railroad

Association*, a race discrimination case in the Southern District of Illinois on behalf of all

African-American and Hispanic employees at a railroad; *Mister v. Illinois Central Gulf Railroad*,

832 F.2d 1427 (7th Cir. 1987), a failure-to-hire class action brought on behalf of hundreds of

African-American applicants from East St. Louis, Illinois at a major railroad which was tried to

conclusion and successfully appealed to the Seventh Circuit Court of Appeals and finally

concluded with more than $10 million for the class over twelve years of litigation; *Wilfong v.

Rent-A-Center*, No. 00-680-DRH (S.D.Ill. 2002), a nationwide gender discrimination in

employment case on behalf of women, which was successfully settled for $47 million and

substantial affirmative relief to the class of thousands, after defeating the defendant's attempt to

conduct a reverse auction.

4.      My firm has been named class counsel in many cases involving claims of

fiduciary breaches in large 401(k) and 403(b) plans. *See Vellali v. Yale University,* No. 16-1345,

2019 WL 5204456 (S.D.N.Y. Sept. 24, 2019); *Bell v. Pension Cmte. of ATH Holding Co.*, No.

15-2062, 2018 WL 4385025 (S.D. Ind. Sept. 14, 2018); *Cunningham v. Cornell Univ.*, No. 16-

6525, Doc. 219 (S.D.N.Y. Jan. 22, 2019); *Cassell v. Vanderbilt Univ.*, No. 16-2086, Doc. 126

(M.D.Tenn. Oct. 23, 2018); *Cates v. Trustees of Columbia Univ.*, No. 16-6524, Doc. 218

(S.D.N.Y. Nov. 8, 2018); *Henderson v. Emory Univ.*, No. 16-2920, Doc. 167 (N.D.Ga. Sept. 13,

2018); *Tracey v. MIT,* No. 16-11620, Doc. 157 (D.Mass. Oct. 19, 2018); S*acerdote v. New York University*, No. 16-6284, 2018 U.S.Dist.LEXIS 23540, 16 (S.D.N.Y. Feb. 13, 2018); *Clark v. Duke Univ.*, No. 16-1044, 2018 U.S.Dist.LEXIS 62532 (M.D.N.C. Apr. 13, 2018); *Ramos v. Banner Health*, No. 15-2556, Doc. 296 (D.Colo. Mar. 23, 2018); *Troudt v. Oracle Corp.*, No. 16-175, 2018 U.S.Dist.LEXIS 15151 (D.Colo. Jan. 30, 2018); *Pledger v. Reliance Trust*, No. 15-4444, Doc. 101 (N.D.Ga. Nov. 7, 2017); *Marshall v. Northrop Grumman Corp.*, No. 16-6794, Doc. 130 (C.D.Cal. Nov. 3, 2017); *Sims v. BB&T Corp.*, No. 15-732, 2017 U.S. Dist. LEXIS 137738 (M.D.N.C. Aug. 28, 2017); *Gordan v. Massachusetts Mutual Life Insurance Co.*, No. 13-30184, Doc. 112 (D.Mass. June 22, 2016); *Kruger v. Novant Health*, No. 14-208, Doc. 53 (M.D.N.C. May 17, 2016); *Krueger v. Ameriprise Financial*, Inc., 304. F.R.D. 559 (D.Minn. 2014); *Abbott v. Lockheed Martin Corp.*, 286 F.R.D. 388 (S.D.Ill. 2012), and *Abbott*, No. 06-701, Doc. 403 (S.D.Ill. Aug. 1, 2014); *Beesley v. Int'l Paper Co.*, No. 06-703, Doc. 240 (S.D.Ill. Sept. 30, 2008), and Doc. 543 (S.D.Ill. Oct. 10, 2013); *Nolte v. Cigna Corp.*, No. 07-2046, 2013 U.S.Dist.LEXIS 101165 (C.D.Ill. July 3, 2013); *Spano v. Boeing Co.*, 294 F.R.D. 114 (S.D.Ill. 2013); *George v. Kraft Foods Global Inc.*, No. 08-3799, 2012 U.S.Dist.LEXIS 26536 (N.D.Ill. Feb. 29, 2012)(*George II*); *In re Northrop Grumman Corp. ERISA Litig.*, No. 06-6213, 2011 U.S. 94451 (C.D.Cal. Mar. 29, 2011); *Will v. General Dynamics Corp.*, No. 06-698, 2010 U.S.Dist.LEXIS 95630 (S.D.Ill. Nov. 22, 2010); *Martin v. Caterpillar Inc.*, No. 07-1009, Doc. 173 (C.D.Ill. April 21, 2010); *Tibble v. Edison Int*'l, No. 07-5359, 2009 U.S. Dist. LEXIS 120939 (C.D.Cal. June 30, 2009); *George v. Kraft Foods Global Inc.*, 251 F.R.D. 338 (N.D.Ill. 2008)(*George I*); *Taylor v. United Tech. Corp.*, No. 06-1494, 2008 U.S.Dist.LEXIS 43655 (D.Conn. June 3, 2008); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102 (N.D.Cal. 2008); *Tussey v. ABB Inc.*, No. 06-4305, 2007 U.S.Dist.LEXIS 88668 (W.D. Mo. Dec. 3, 2007); *Loomis v. Exelon*

*Corp.*, No. 06-4900, 2007 U.S.Dist.LEXIS 46893 (N.D.Ill. June 26, 2007). A brief biography of

my firm, including summaries of our professional experience, is attached to my prior declaration

filed in this case at Doc. 85-2.

     5.      My work in plaintiffs' class action cases has been noted by federal judges.

Honorable Judge James Foreman, in the *Mister* case, *supra*, speaking of my efforts, stated:

> This Court is unaware of any comparable achievement of public good by a private
> lawyer in the face of such obstacles and enormous demand of resources and
> finance.

Order on Attorney's Fees, *Mister v. Illinois Central Gulf R.R.*, No. 81-3006 (S.D.Ill. 1993).

     6.      Honorable Judge David R. Herndon wrote, regarding my and the firm's handling

of the *Wilfong* class action, *supra*:

> Class counsel has appeared in this court and has been known to this Court for
> approximately 20 years. This Court finds that Mr. Schlichter's experience,
> reputation and ability are of the highest caliber. Mr. Schlichter is known well to
> the District Court Judge and this Court agrees with Judge Foreman's review of
> Mr. Schlichter's experience, reputation and ability.

Order on Attorney's Fees, *Wilfong v. Rent-A-Center*, No. 0068-DRH (S.D.Ill. 2002). Judge

Herndon also noted in *Wilfong* that I "performed the role of a 'private attorney general'

contemplated under the common fund doctrine, a role viewed with great favor in this Court" and

described my action as "an example of advocacy at its highest and noblest purpose." *Id.*

     7.      In *Beesley v. International Paper*, a 401(k) ERISA excessive fee case that resulted

in a settlement of $30 million plus substantial affirmative relief following seven years of

litigation, Judge David Herndon observed: "Litigating this case against formidable defendants

and their sophisticated attorneys required Class Counsel to demonstrate extraordinary skill and

determination. Schlichter, Bogard & Denton and lead attorney Jerome Schlichter's diligence and

perseverance, while risking vast amounts of time and money, reflect the finest attributes of a

private attorney general." *Beesley v. Int'l Paper Co.*, No. 06-703, 2014 WL 375432, at 2 (S.D.Ill.

Jan. 31, 2014). Similarly, in *Abbot v. Lockheed Martin*, a 401(k) excessive fee case that took over nine years, Honorable Chief Judge Reagan observed that "[t]he law firm Schlichter, Bogard & Denton has had a humongous impact over the entire 401(k) industry, which has benefitted employees and retirees throughout the country by bringing sweeping changes to fiduciary practices." *Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 WL 4398475, at 3 (S.D.Ill. July 17, 2015).

8.      In *Will v. General Dynamics*, another ERISA excessive fee case, Honorable Judge Patrick Murphy found that litigating the case and achieving a successful result for the class "required Class Counsel to be of the highest caliber and committed to the interests of the participants and beneficiaries of the General Dynamics 401(k) Plans." *Will v. General Dynamics Corp.*, No. 06-698, 2010 WL 4818174, at 2 (S.D. Ill. Nov. 22, 2010).

9.      Honorable Judge Baker, in *Nolte v. Cigna*, commented that Schlichter, Bogard & Denton is the "preeminent firm in 401(k) fee litigation" and has "persevered in the face of the enormous risks of representing employees and retirees in this area." *Nolte v. Cigna Corp.,* No. 07-2046, 2013 WL 12242015, at 2 (C.D.Ill. Oct. 15, 2013). Judge McDade of the Central District of Illinois, again speaking of the firm, observed that achieving a favorable result in this type of case required extraordinary efforts because the "litigation entails complicated ERISA claims". *Martin v. Caterpillar, Inc*., No. 07-1009, 2010 WL 3210448, at *2 (C.D.Ill. Aug. 12, 2010).

10.     In approving a settlement including $32 million plus significant affirmative relief, in a 403(b) excessive fee case in this Circuit, Honorable Chief Judge William Osteen in *Kruger v. Novant Health, Inc.*, No. 14-208, Doc. 61 at 7–8 (M.D.N.C. Sept. 29, 2016) found that "Class Counsel's efforts have not only resulted in a significant monetary award to the class but have

also brought improvement to the manner in which the Plans are operated and managed which

will result in participants and retirees receiving significant savings[.]"

11.     In awarding attorney's fees after the first 401(k) excessive fee trial, Judge Nanette

Laughrey concluded that "Plaintiffs' attorneys are clearly experts in ERISA litigation." *Tussey v.*

*ABB, Inc*., No. 06-4305, 2012 WL 5386033, at *3 (W.D. Mo. Nov. 2, 2012). Following remand,

the district court again awarded Plaintiffs' attorney's fees, emphasizing the significant

contribution Plaintiffs' attorneys have made to ERISA litigation, including educating the

Department of Labor and federal courts about the importance of monitoring fees in retirement

plans:

> Of special importance is the significant, national contribution made by the
> Plaintiffs whose litigation clarified ERISA standards in the context of investment
> fees. The litigation educated plan administrators, the Department of Labor, the
> courts and retirement plan participants about the importance of monitoring
> recordkeeping fees and separating a fiduciary's corporate interest from its
> fiduciary obligations.

*Tussey v. ABB, Inc.*, No. 06-4305, 2015 WL 8485265, at *2 (W.D. Mo. Dec. 9, 2015).

12.     After recognizing "their persistence and skill of their attorneys", Judge Nancy

Rosenstengel similarly noted:

> Class Counsel has been committed to the interests of the participants and
> beneficiaries of Boeing's 401(k) plan in pursuing this case and several other
> 401(k) fee cases of first impression. The law firm Schlichter, Bogard & Denton
> has significantly improved 401(k) plans across the country by bringing cases such
> as this one[.]

*Spano*, 2016 WL 3791123, at *3.

13.     Recently, Judge Catherine Eagles noted that "these [ERISA] cases require a high

level of skill on behalf of plaintiffs to achieve any recovery." *Clark v. Duke*, No. 1:16-CV-

01044, Doc. 165 at 6 (M.D.N.C. June 24, 2019). In approving attorneys' fees, Judge Eagles

concluded that "Class Counsel has demonstrated diligence, skill, and determination in this matter

and, more generally, in an area of law in which few attorneys and law firms are willing or capable of practicing." *Id*. at 7.

14.     I have also spoken on ERISA litigation breach of fiduciary duty claims at national ERISA seminars as well as other national bar seminars.

15.     In the decades of my private practice, I have never been reprimanded, sanctioned or otherwise disciplined with respect to any aspect of the practice of law.

16.     Since 2005, my firm and I have been investigating, preparing and handling, on behalf of plan participants, numerous cases against fiduciaries of large 401(k) plans alleging fiduciary breaches including excessive fees, conflicts of interests and prohibited transactions under ERISA.

17.     My firm has filed ERISA fiduciary breach class actions in numerous judicial districts throughout the United States, including districts within the First, Second, Third, Fourth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh Circuits.

18.     After close to a decade of handling excessive 401(k) fee cases, my firm and I began investigating similar claims for excessive fees and imprudent investments involving large 403(b) plans sponsored by private universities. This investigation was extensive, lasting well over one year prior to the filing of a 403(b) university plan lawsuit. My firm and I thoroughly researched legal and factual issues concerning 403(b) plans in general, as well as conducted specific analyses pertaining to each 403(b) plan under investigation. We also were assisted by experienced industry professionals knowledgeable about prudent fiduciary practices governing 403(b) plans, the market rate for 403(b) plan services, and other issues pertaining to the administration of 403(b) plans.

19.     Beginning in August 2016, after more than one year of diligently investigating potential fiduciary breach claims involving 403(b) plans, my firm expanded its national ERISA practice by filing excessive 403(b) fee cases against private universities. These lawsuits were similar to the 401(k) excessive fee cases previously handled by my firm. This lawsuit was one of a number of lawsuits that were filed in 2016 alleging breaches of fiduciary duty and prohibited transactions concerning excessive fees charged to 403(b) plan participants and imprudent investments included in their plans.

20.     No law firm had ever brought an excessive 401(k) or 403(b) case before my firm did, and no other law firm has brought the number of cases our firm has brought, including:

- the first two trials of excessive 401(k) fee cases;

- the first and only 401(k) case in the United States Supreme Court; and

- the first and only trial of a 403(b) excessive fee case.

21.     The first full trial of such a 401(k) case resulted in a judgment for the plaintiffs that was affirmed in part by the Eighth Circuit. *Tussey v. ABB, Inc.*, No. 06-4305, 2012 WL 1113291 (W.D.Mo. Mar. 31, 2012), aff'd in part, rev'd in part, 746 F.3d 327 (8th Cir. 2014). As Judge Laughrey noted in that case, "[i]t is well established that complex ERISA litigation involves a national standard and special expertise. Plaintiffs' attorneys are clearly experts in ERISA litigation." *Tussey v. ABB, Inc.*, No. 06-4305, 2012 WL 5386033, at 3 (W.D.Mo. Nov. 2, 2012)(citations omitted). That case involved two appeal, lasted twelve and a half years, and was only recently settled.

22.     In the other 401(k) excessive fee trial, *Tibble v. Edison Int'l,* the United States Supreme Court granted our petition for writ of certiorari in the first and only ERISA 401(k) excessive fee case taken by the Supreme Court. In a 9-0 unanimous decision, the Supreme Court

8

vacated the Ninth Circuit's affirmance of the summary judgment order and held that an ERISA fiduciary has a continuing duty to monitor plan investments and remove imprudent ones regardless of when they were added. *Tibble v. Edison Int'l*, 135 S.Ct. 1823 (2015). This was a watershed and landmark decision in ERISA litigation. Sitting *en banc*, ten judges of the Ninth Circuit on remand unanimously vacated a Ninth Circuit panel decision and remanded to the district court to determine whether the defendants violated their continuing duty to monitor the 401(k) plan's investments, stating that "cost-conscious management is fundamental to prudence in the investment function". *Tibble v. Edison Int'l*, 843 F.3d 1187, 1199 (9th Cir. 2016)(citation omitted). Following remand, in August 2017, the plaintiffs obtained a judgment of $13.4 million in plan losses and investment opportunity. *Tibble,* No. 07-5359, 2017 WL 3523737 (C.D.Cal. Aug. 16, 2017); *Tibble,* Docs. 570, 572. A portion of the case is still on appeal.

23.     My firm also handled the first excessive 403(b) case in history to go to trial. *Sacerdote v. New York Univ.*, 328 F.Supp.3d 273 (S.D.N.Y. 2018). That trial occurred in April 2018, and judgment was entered on July 31, 2018, finding in favor of New York University and against the plaintiffs. Plaintiffs have filed a notice of appeal.

24.     Before my firm brought ERISA 401(k) or 403(b) excessive fee cases, virtually no firm was willing to bring such a case, and I know of no other firm that has made anything close to the financial and attorney commitment to such cases to this date. Given that no other private law firm or the Department of Labor brought these cases before my firm entered this space, the ERISA fiduciary breach actions brought by my firm were novel and certainly groundbreaking.

25.     Several of the 401(k) cases my office filed were dismissed and the dismissals upheld by the Courts of Appeals. *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009); *Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011); *Renfro v. Unisys Corp.*, 671 F.3d 314 (3d Cir.

9

2011). Others had summary judgment granted against the plaintiffs in whole or in part. *Kanawi v. Bechtel Corp.*, 590 F.Supp.2d 1213 (N.D. Cal. 2008); *Taylor v. United Techs. Corp.*, No. 06-3194, 2009 U.S.Dist.LEXIS 19059 (D. Conn. Mar. 3, 2009), aff'd, 354 Fed. Appx. 525 (2d Cir. 2009); *George v. Kraft Foods Global, Inc.*, 684 F.Supp. 2d 992 (N.D.Ill. 2010), rev'd in part, 641 F.3d 786 (7th Cir. 2011); *Tibble v. Edison Int'l*, 639 F.Supp.2d 1074 (C.D.Cal. 2009), aff'd, 729 F.3d 1110 (9th Cir. 2013), vacated, 135 S. Ct. 1823 (2015), aff'd on remand, 820 F.3d 1041 (9th Cir. 2016); *Cunningham v. Cornell Univ.*, 16-6525, 2019 WL 4735876 (S.D.N.Y. Sep. 27, 2019).

26.     One of the 403(b) cases handled by my office also was dismissed and is pending on appeal. *Divane v. Northwestern Univ.*, No. 16-8157, 2018 WL 2388118 (N.D.Ill. May 25, 2018).

27.     Prior to the filing the *Kelly* lawsuit in August 2016, my firm began researching the Johns Hopkins University 403(b) Plan, investigating claims, and consulting with experts in the field of 403(b) administration and investment management. The investigation began with obtaining and reviewing each of the Plan's Annual Reports since 2009 (Forms 5500), which are publicly available documents filed with the United States Department of Labor in which the Plan discloses its investment holdings and financial statements. Using this data, we conducted an extensive analysis of the Plan's administrative fees and investment performance based on our knowledge of industry practices.

28.     On behalf of one of the named plaintiffs in this lawsuit, my firm also requested from the Plan administrator under 29 U.S.C. §1024(b) documents and other information related to the administration of the Plan, which included plan documents, custodial account agreements, recordkeeping services agreements, the summary plan description, and fee disclosures, among

other documents. We also analyzed documents obtained from the named plaintiffs and other material obtained from publicly available sources related to the administration of the Plan.

29.     In this case, my firm will likely spend significant future time and additional expenses without additional compensation both before and after final approval and during the three-year settlement period. For instance, with over 39,000 current and former participants who are sent notices, in my experience, the firm will receive a high volume of calls from Class members to address questions related to the settlement. The firm also will work with the settlement administrator to facilitate the settlement during the settlement period.

30.     The Settlement Agreement provides—as part of its comprehensive affirmative relief—that Class Counsel will continue to monitor and go through the process of enforcing the terms of the agreement. Class Counsel will not request an additional award of fee for any of these future services to the Plan.

31.     In my opinion, the affirmative relief obtained herein has substantial value beyond the monetary value of the settlement of $14 million due to the substantial changes that the Johns Hopkins University will make to the Plan as a result of this lawsuit and other reforms required by the terms of the settlement.

32.     As a practical matter, litigants such as named Plaintiffs Margaret E. Kelly, Katrina Allen, Jeremiah M. Daley, Jr., Treva N. Boney, Tracy L. McCracken, Jerrell Baker, Lourdes Cordero, and Francine Lampros-Klein, could not afford to pursue litigation against well-funded fiduciaries of a multi-billion dollar 403(b) plan sponsored by a large employer such as the Johns Hopkins University in federal court on any basis other than a contingent fee. I know of no law firm in the United States, of the very few firms which would even consider handling such a

case as this or that would handle any ERISA class action, with an expectation of anything but a percentage of the common fund created.

33.     The contingency fee agreements entered into between my firm and each of the named Plaintiffs David Clark, Thomas Mehen, Kathi Lucas, Jorge Lopez, and Keith Feather in this case provide for our fee to be one-third of any recovery plus expenses. The plaintiffs in other ERISA fiduciary breach cases brought by my firm have also signed similar agreements calling for a one-third contingency fee plus expenses.

34.     Prior to this lawsuit, my firm did not have a professional relationship with any of the Named Plaintiffs.

35.     These kinds of excessive fee cases involve tremendous risk, require review and analysis of thousands of documents, finding and obtaining opinions from expensive, unconflicted, consulting and testifying experts in finance, investment management, fiduciary practices, and related fields, and are extremely hard fought and well-defended.

36.     A law firm that brings a putative class action such as this must be prepared to finance the case for years through a trial and appeals, all at substantial expense. This has been my experience in handling these types of cases. For example, in *Tussey v. ABB*, *supra,* seven experts testified at trial, and the two defendant groups therein had 15 or more lawyers present in the courtroom throughout the month long trial. In addition, all parties, including plaintiffs, had a technology team present throughout. In addition, our firm expended over $2,000,000 in out-of-pocket expenses by the conclusion of the trial therein, and carried the expense without reimbursement for more than twelve years. That case has continued after being tried almost ten years ago, followed by two appeals to the Eighth Circuit, and multiple remandments to the

district court. *Tibble v. Edison Int'l*, *supra*, is also still pending in its twelfth year with another appeal in the Ninth Circuit.

37.     Based on my experience, the market for experienced and competent lawyers willing to pursue ERISA excessive fee litigation is a national market, and the rate of 33 1/3% of any recovery, plus costs is necessary to bring such cases. This is the rate that a qualified and experienced attorney would negotiate at the beginning of the litigation, and the rate found reasonable in similar ERISA fee cases in numerous federal district courts.

- *Tussey v. ABB, Inc.,* No. 06-CV-04305-NKL, Doc. 869 (W.D.Mo. August 16, 2019);

- *Sims v. BB&T Corp.,* No. 15-1705, 2019 WL 1993519 (M.D.N.C. May 6, 2019);

- *Clark v. Duke*, No. 1:16-CV-01044, Doc. 166 (M.D.N.C. June 24, 2019);

- *Cassell v. Vanderbilt Univ.*, No. 3:16-CV-02086, Doc. 174 (M.D.Tenn. Oct. 22, 2019);

- *Bell v. Pension Comm. Of ATH Holding Co., LLC*, No. 1:15-CV-02062, Doc. 380 (S.D.Ind. Sept. 4, 2019);

- *Ramsey v. Philips,* No. 18-1099, Doc. 27 (S.D.Ill. Oct. 15, 2018);

- *In re Northrop Grumman Corp. ERISA Litig.,* No. 06-6213, 2017 WL 9614818 (C.D.Cal. Oct. 24, 2017);

- *Gordan v. Mass. Mutual Life Ins. Co.*, No. 13-30184, 2016 WL 11272044 (D. Mass. Nov. 3, 2016);

- *Kruger v. Novant Health, Inc.*, No. 14-208, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016);

- *Spano v. Boeing Co.*, No. 06-743, 2016 WL 3791123 (S.D.Ill. Mar. 31, 2016);

- *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475 (S.D.Ill. July 17, 2015);

- *Krueger v. Ameriprise Financial Inc.*, No. 11-2781, 2015 WL 4246879 (D.Minn. July 13, 2015);

- *Beesley v. Int'l Paper Co.,* No. 06-703, 2014 WL 375432 (S.D.Ill. Jan. 31, 2014);

- *Nolte v. Cigna Corp.*, No. 07-2046, 2013 WL 12242015 (C.D.Ill Oct. 15, 2013);

13

- *George v. Kraft Foods Global*, No. 07-1713, 2012 WL 13089487 (N.D.Ill. June 26, 2012);

- *Will v. General Dynamics*, No. 06-698, 2010 WL 4818174 (S.D.Ill. Nov. 22, 2010); and

- *Martin v. Caterpillar, Inc.*, No. 07-1009, 2010 WL 11614985 (C.D.Ill. Sept. 10, 2010).

38.     The kind of long-term expensive commitment of time and resources is needed if plan participants are to receive full compensation for their losses in such cases. Because my firm has committed to doing this in each case we pursue, it is my opinion that defendants take into account this firm's long-term commitment to these cases in assessing their costs and the likelihood of success.

39.     My firm devoted 2,566.1 hours of attorney and non-attorney time to date to prosecute the ERISA claims on behalf of the John Hopkins participants and beneficiaries. The summary of time expended attached hereto as **Exhibit A** is a summary indicating the amount of time, by work category, spent by each attorney and paralegal who was involved in this litigation. More time will be spent handling responses from participants who receive notice, preparing for the final approval hearing, and traveling to the final approval hearing in January. In addition, there will be substantial attorney time spent after the settlement effective date. Because my firm works solely on a contingency fee basis, and there is a limited number of active cases it can handle at any given point, the decision to pursue this class action and commit significant resources to obtain a successful recovery on behalf of the class through potentially years of litigation impacted the firm's ability to handle other class actions or pursue other less risky matters.

40.   My firm will also monitor the settlement agreement for a three-year period without seeking any reimbursement. This includes reviewing a list of the Plan's investment options, fees

14

charged by those investments, and a copy of the Investment Policy Statement (if any) each year; reviewing final bid amounts that were submitted in response to a request for proposals for recordkeeping vendors; handle any enforcement actions if necessary; respond to calls from class members; and bear half the expense if the settlement is not approved.

41.     By my firm obtaining this settlement for the Class without further delay, the Class members will benefit by not only avoiding risk but also avoiding what would have been substantial costs and delay for trial and potential appeals. In addition, they will benefit by being able to invest their recoveries and benefit from the earnings much earlier than if there had been years of delay. Likewise, the non-monetary relief will benefit them much earlier than if they had obtained the same relief after years more of litigation.

42.     Schlichter, Bogard & Denton does not bill clients on an hourly basis. In October 2019, based on the national market for complex ERISA fiduciary breach litigation, the following hourly rates for my firm were approved: $1,060/hour for attorneys with at least 25 years of experience, $900/hour for attorneys with 15–24 years of experience, $650/hour for attorneys with 5–14 years of experience, $490/hour for attorneys with 2–4 years of experience, and $330/hour for Paralegals and Law Clerks. *Cassell*, Doc. 174 at 3.

43.     These rates were brought up to date based on 2016 hourly rates for Schlichter, Bogard & Denton that were previously approved by Chief Judge Osteen in this Circuit. *Kruger*, 2016 WL 6769066 at 4. Judge Osteen adopted the 2016 hourly rates that were previously approved by the Southern District of Illinois in *Spano,* 2016 WL 3791123 at 3. The rates were: $998/hour for attorneys with at least 25 years of experience, $850/hour for attorneys with 15–24 years of experience, $612/hour for attorneys with 5–14 years of experience, $460/hour for

attorneys with 2–4 years of experience, $309/hour for Paralegals and Law Clerks, and $190/hour for Legal Assistants.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and that this declaration was executed this 8th day of November, 2019, in St. Louis, Missouri.

/s/ Jerome J. Schlichter
Jerome J. Schlichter

16

# HOURS EXPENDED BY WORK CATEGORY

| Billing Attorney or Paralegal | Position | Year Licensed | Years in Practice | Total Hours | Case Development | Motion Practice | Pleadings | Discovery | Depositions | ADR |
|---|---|---|---|---|---|---|---|---|---|---|
| Jerry Schlichter | Attorney | 1972 | 47 | 255.5 | 30.9 | 14.4 | 9.1 | 28.3 | 0 | 172.8 |
| Michael Wolff | Attorney | 1990 | 29 | 93.1 | 2.9 | 0.2 | 24.6 | 62.9 | 0 | 2.5 |
| Mary Edwards | Attorney | 1995 | 24 | 108 | 0 | 0 | 0 | 4.2 | 0 | 103.8 |
| Matthew Siegler | Attorney | 1999 | 20 | 142.2 | 0 | 0 | 0 | 0 | 0 | 142.2 |
| Heather Lea | Attorney | 2001 | 18 | 46.6 | 42 | 0 | 1.8 | 0.6 | 0 | 2.2 |
| Sean Soyars | Attorney | 2005 | 14 | 138.5 | 4.7 | 97.7 | 28.9 | 0.8 | 0 | 6.4 |
| Sean Stewart | Attorney | 2006 | 13 | 292.7 | 2 | 16 | 0 | 2.9 | 16.3 | 255.5 |
| Gary Drag | Attorney | 2007 | 12 | 205.5 | 81.3 | 0 | 39.8 | 0 | 0 | 84.4 |
| Crystal Hopkins | Attorney | 2007 | 12 | 62.9 | 0 | 0 | 0 | 0 | 0 | 62.9 |
| Kurt Struckhoff | Attorney | 2009 | 10 | 311.8 | 30.7 | 5.7 | 32.1 | 76.2 | 0 | 167.1 |
| Jim Casagrand | Attorney | 2010 | 9 | 276.3 | 276.3 | 0 | 0 | 0 | 0 | 0 |
| Scott Bumb | Attorney | 2012 | 7 | 124 | 46.8 | 0 | 2.3 | 72.5 | 0 | 2.4 |
| Jay Redd | Attorney | 2013 | 6 | 96.4 | 96.2 | 0 | 0 | 0.2 | 0 | 0 |
| Scott Apking | Attorney | 2014 | 5 | 37.1 | 0 | 0 | 0 | 0.4 | 0 | 36.7 |
| Ethan Hatch | Attorney | 2015 | 4 | 104.1 | 12.1 | 28.6 | 55.5 | 3.8 | 0 | 4.1 |
| William Avery | Attorney | 2016 | 3 | 45.7 | 0 | 0 | 0.2 | 0 | 0 | 45.5 |
| Phil Abbott | Attorney | 2016 | 3 | 225.7 | 0 | 0 | 0 | 0 | 0 | 225.7 |
| Charlotte Mabus | Paralegal | | | 99 | 33.9 | 2.9 | 4.2 | 57.8 | 0 | 0.2 |
| Kevin Martin | Paralegal | | | 23.6 | 23.6 | 0 | 0 | 0 | 0 | 0 |
| Rebekah Freisinger | Paralegal | | | 41.6 | 31.3 | 2.2 | 2.5 | 3.1 | 0 | 2.5 |
| Shelby Gray | Paralegal | | | 55.4 | 45 | 9.7 | 0.7 | 0 | 0 | 0 |
| Olga Stojanovic | Paralegal | | | 30 | 1.6 | 0 | 3 | 0 | 0 | 25.4 |