## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

MARGARET E. KELLY, et al.,

      *Plaintiffs,*

v.

             No. 1:16-cv-2835-GLR

THE JOHNS HOPKINS UNIVERSITY,

      *Defendant.*

### MEMORANDUM AND ORDER

George L. Russell, III, District Judge.

Class Counsel for Plaintiffs seek an award of attorneys' fees, reimbursement of reasonable expenses, and compensation for class representatives from a common fund created from the class action settlement. The Court has reviewed Class Counsel's request and supporting evidence, as well as attorney-fee and class-representative awards from similar cases. For the reasons stated herein, the Court will grant the motion.

### BACKGROUND

On August 11, 2016, Plaintiffs filed *Kelly v. The Johns Hopkins University,* No. 16-2835-GLR. Doc. 1.[1] Plaintiffs assert seven counts against Defendant. In Counts I and II, Plaintiffs allege Defendant breached its duty of loyalty and prudence under 29 U.S.C. § 1104(a)(1)(A)–(B) and committed prohibited transactions under §1106(a)(1) by locking the Plan into providing the CREF Stock Account, regardless of its performance or fees, and locking the Plan into TIAA's recordkeeping services. In Counts III and IV, Plaintiffs allege that Defendant breached its duties

---

[1] All "Doc." references are to the *Kelly* docket unless otherwise indicated.

of loyalty and prudence under 29 U.S.C. §1104(a)(1)(A)–(B) and committed prohibited transactions under §1106(a)(1) by using five vendors instead of a single recordkeeper, allowing those recordkeepers to receive unreasonable compensation, failing to prudently monitor and control recordkeeping expenses, and failing to solicit bids from other recordkeepers. Under Counts V and VI, Plaintiffs assert that Defendant breached its duties of loyalty and prudence under 29 U.S.C. §1104(a)(1)(A)–(B) and committed prohibited transactions under §1106(a)(1) by failing to prudently monitor Plan investment options, resulting in the use of high-cost and underperforming funds compared to alternatives available to the Plan. Under Count VII, to the extent Defendant delegated any of its fiduciary duties, Plaintiffs allege that Defendant failed to prudently monitor the actions of those individuals.[2]

On January 6, 2017, Defendant moved to dismiss the amended complaint. Doc. 29. On September 29, 2017, the Court granted in part and denied in part Defendant's motion to dismiss Plaintiffs' amended complaint. Doc. 45. The motion was granted to the extent Plaintiffs allege under Counts I, III, and V that "Johns Hopkins acted imprudently by offering too many investment options or higher-cost share classes in the Plan", and for Counts II, IV, and VI, to the extent that Plaintiffs allege that maintaining "mutual funds or that revenue sharing from a mutual fund is a prohibited transaction." *Id.* at 3. The motion was denied in all other respects.

The parties have engaged in over two years of hard-fought litigation. On August 6, 2019, Plaintiffs then moved for preliminary approval of the settlement, Doc. 84, which was granted on August 16, 2019. Doc. 153. On October 23, 2018, the Court granted Plaintiffs' motion to certify the settlement class under Rule 23(b)(1) and appointed Schlichter Bogard & Denton Class Counsel. Doc. 84. The Court appointed Named Plaintiffs Margaret E. Kelly, Katrina Allen,

---

[2] Count VII labeled as Count VIII in the amended complaint.

2

Jeremiah M. Daley, Jr., Treva N. Boney, Tracy L. McCracken, Jerrell Baker, Lourdes Cordero, and Francine Lampros-Klein class representatives.

Class Counsel has filed the first cases in history claiming excessive fees in 403(b) plans. Prior thereto, no case had ever been brought by a private law firm or the Department of Labor asserting claims of fiduciary breach for excessive fees and imprudent investments involving a 403(b) plan. Schlichter Bogard & Denton pioneered this ground-breaking and novel area of litigation. More than a decade prior, Schlichter Bogard & Denton similarly pioneered excessive fee litigation involving 401(k) plans. As has been repeatedly recognized, Schlichter Bogard & Denton's work on behalf of participants in large 401(k) and 403(b) plans has significantly improved these plans, brought to light fiduciary misconduct that has detrimentally impacted the retirement savings of American workers, and dramatically brought down fees in defined contribution plans.

Class Counsel filed the pending motion for attorneys' fees on August 23, 2019. Doc. 154. Counsel requests $4,666,667 in attorneys' fees (one-third of the monetary recovery), reimbursement of $53,539.78 in litigation-advanced expenses, and case contribution awards of $20,000 each for Named Plaintiffs Margaret E. Kelly, Katrina Allen, Jeremiah M. Daley, Jr., Treva N. Boney, Tracy L. McCracken, Jerrell Baker, Lourdes Cordero, and Francine Lampros-Klein. Defendant has not opposed the motion.

## ANALYSIS

### I. Attorney's Fees

In a class action, the court may award reasonable attorney's fees and nontaxable costs as authorized by law or by agreement. Fed. R. Civ. P. 23(h). In a common fund case, such as this, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*,

3

465 U.S. 886, 900 n.16 (1984). Within the Fourth Circuit, district courts prefer the percentage

method in common-fund cases. *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 481 (D. Md. 2014)

("District Courts in the Fourth Circuit, and the majority of courts in other jurisdictions, use the

percentage of recovery method in common fund cases."). It is "overwhelmingly" preferred.

*Krakauer v. Dish Network, L.L.C.*, No. 14-333, 2018 WL 6305785, at *2 (M.D.N.C. Dec. 3,

2018); *Archbold v. Wells Fargo Bank, N.A.*, No. 13-24599, 2015 WL 4276295, at *5 (S.D.W.

Va. July 14, 2015) ("[T]he Court concludes that there is a clear consensus ...that the award of

attorneys' fees in common fund cases should be based on a percentage of the recovery.").

   The Fourth Circuit has not identified the factors for district courts to apply when determining

the reasonableness of a fee award using the "percentage of recovery" method. District courts in

this circuit have analyzed the following seven factors: "(1) the results obtained for the class; (2)

the quality, skill, and efficiency of the attorneys involved; (3) the risk of nonpayment; (4)

objections by members of the class to the settlement terms and/or fees requested by counsel; (5)

awards in similar cases; (6) the complexity and duration of the case; and (7) public policy[.]"

*Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 682 (D. Md. 2013).

   Other district courts have used the twelve factors identified in *Barber v. Kimbrell's, Inc.*: "(1)

the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill

required to properly perform the legal services rendered; (4) the attorney's opportunity costs in

pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations

at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8)

the amount in controversy and the results obtained; (9) the experience, reputation and ability of

the attorney; (10) the undesirability of the case within the legal community in which the suit

arose; (11) the nature and length of the professional relationship between attorney and client; and

4

(12) attorney's fees awards in similar cases." 577 F.2d 216, 226 & n.28 (4th Cir. 1978) (adopting

factors from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.

1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92–93 (1989)).

Under either test, the Court finds that Class Counsel's attorneys' fees request is reasonable and

appropriate in this case.

   The Court also conducted a lodestar cross-check that compares the requested contingent fee

award against a fee calculated based on hours spent at prevailing market rates. *See Boyd v.

Coventry Health Care, Inc.*, 299 F.R.D. 451, 467 (D. Md. 2014) ("The purpose of a lodestar

cross-check is to determine whether a proposed fee award is excessive relative to the hours

reportedly worked by counsel, or whether the fee is within some reasonable multiplier of the

lodestar.").

## A. Relevant Factors

   Class Counsel requests attorney's fees of one-third of the settlement proceeds, or $4,666,667.

The requested fee of one-third of the monetary recovery is reasonable and appropriate given the

"significant risk of nonpayment" in these types of cases due to "the novel nature of this case and

adverse precedents". *Kruger v. Novant Health, Inc.*, No. 14-208, 2016 WL 6769066, at *4

(M.D.N.C. Sept. 29, 2016). In particular, for this case, and 403(b) excessive fee cases in general,

the risk of nonpayment was tremendous. No other excessive 403(b) fee lawsuit had been filed

before Class Counsel did, and no other law firm had been willing to devote the necessary

resources to prosecute this type of action. Without question, this case required a willingness by

counsel to risk very significant amounts of time and money "in the face of vigorous resistance"

by the defendants. *Ramsey v. Philips N.A.,* No. 18-1099, Doc. 27 at 2 (S.D.Ill. Oct. 15, 2018).

Contingent fees of up to one-third are common in this circuit. *Decohen,* 299 F.R.D. at 483; *In re Titanium Dioxide Antitrust Litig.*, No. 10-318, 2013 WL 6577029, at *1 (D.Md. Dec. 13, 2013); *Clark v. Duke Univ.*, No. 16-1044, 2019 WL 2579201, at *3 (M.D.N.C. June 24, 2019); *Sims v. BB&T Corp.,* No. 15-1705, 2019 WL 1993519, at *2 (M.D.N.C. May 6, 2019); *Krakauer,* 2018 WL 6305785, at *2; *Kruger,* 2016 WL 6769066, at *5. In similar ERISA excessive fee cases, and in particular those brought by Class Counsel, district courts have consistently recognized that a one-third fee is the market rate. *Clark,* 2019 WL 2579201, at *3; *Sims,* 2019 WL 1993519, at *2 ; *Kruger,* 2016 WL 6769066, at *2 (*citing Spano v. Boeing Co.*, No. 06-743, 2016 WL 3791123, at *2 (S.D.Ill. Mar. 31, 2016), *Abbott v Lockheed Martin Corp.*, No. 06-701, 2015 WL 4398475, at *2 (S.D.Ill. July 17, 2015), *Beesley v. Int'l Paper Co.*, No. 06-703, 2014 WL 375432, at *2 (S.D.Ill. Jan. 31, 2014), *Nolte v. Cigna Corp.*, No. 07-2046, 2013 WL 12242015, at *3 (C.D.Ill. Oct. 15, 2013), *George v. Kraft Foods Global, Inc.*, Nos. 08-3899, 07-1713, 2012 WL 13089487, at *3 (N.D.Ill. June 26, 2012), *Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 WL 4818174, at *3 (S.D.Ill. Nov. 22, 2010), *Martin v. Caterpillar Inc.*, No. 07-1009, 2010 WL 11614985, at *2 (C.D.Ill. Sept. 10, 2010)); *see also Cassell v. Vanderbilt Univ.*, No. 16-2086, Doc. 174 (M.D. Tenn. Oct. 22, 2019); *Tussey v. ABB, Inc.,* No. 06-4305-NKL, Doc. 870 (W.D. Mo. August 16, 2019); *Gordan v. Mass. Mut. Life. Ins. Co.*, No. 13-30184, 2016 WL 11272044, at *2 (D.Mass. Nov. 3, 2016); *Ramsey,* Doc. 27 at 5. In each of those cases, the district courts awarded one-third of the settlement to cover attorney's fees. This great weight of authority more than demonstrates that a one-third fee is justified in this case.

This is a highly complex case with numerous issues that were vigorously contested. *Smith v. Krispy Kreme Doughnut Corp.*, No. 05-187, 2007 WL 119157, at *2 (M.D.N.C. Jan. 10, 2007) (noting "ERISA law is highly complex"); *see Goldenberg v. Marriott PLP Corp.*, 33 F.Supp.2d

6

434, 439 (D. Md. 1998) (finding the case was complex based on a "regulatory climate in flux.").

The "rapidly evolving" area of law places demands on counsel and the Court that are "complex and require the devotion of significant resources". *In re Wachovia Corp. ERISA Litig.*, No. 09-262, 2011 WL 5037183, at *4 (W.D.N.C. Oct. 24, 2011). Excessive fee litigation "entails complicated ERISA claims that are not only dependent on the statute but also on various regulations that implement ERISA." *Martin*, 2010 WL 3210448, at *2. It also involves "novel questions of law". *Tussey v. ABB, Inc.*, No. 06-4305, 2012 WL 5386033, at *3 (W.D.Mo. Nov. 2, 2012).

The size and complexity of the issues before the Court, and the novelty of the litigated claims involving a 403(b) plan, are more than sufficient reasons to support a one-third contingent fee. Indeed, the fact that excessive 403(b) litigation did not exist until Schlichter, Bogard & Denton began "holding employers responsible" for their misconduct exemplifies the difficulty and uncertainty in obtaining any recovery in this litigation. *Cf. Spano v. Boeing Co.*, No. 06-743, 2016 WL 3791123, at *3 (S.D.Ill. Mar. 31, 2016).

In light of the complexity of this ERISA class action, "it takes skilled counsel to manage a nationwide class action, carefully analyze the facts and legal claims and defenses under ERISA, and bring a complex case to the point at which settlement is a realistic possibility." *Krispy Kreme,* 2007 WL 119157, at *2. It is "well established that complex ERISA litigation", such as this, requires "special expertise", *Tussey,* 2012 WL 5386033, at *3, and class counsel of the "the highest caliber", *Nolte,* 2013 WL 12242015, at *3. With an opponent that is a "sophisticated corporation with sophisticated counsel", such as here, additional skill is necessary, *Nolte,* 2013 WL 12242015, at *3, as Class Counsel herein has been found to be. This Court agrees that Schlichter, Bogard & Denton are Class Counsel of the highest caliber.

7

Class Counsel displayed extraordinary skill and determination throughout this litigation. Schlichter, Bogard & Denton has been recognized by federal courts throughout the country as having pioneered similar ERISA excessive fee litigation. Schlichter, Bogard & Denton brought the first two trials of 401(k) excessive fee cases and is the only firm to have successfully handled a 401(k) excessive fee case in the Supreme Court. *Tibble v. Edison, Int'l,* 135 S.Ct. 1823 (2015); *Tussey v. ABB, Inc.,* 746 F.3d 327 (8th Cir. 2014).

The ground-breaking nature of the work of Schlichter, Bogard & Denton is further illustrated in this litigation. Schlichter, Bogard & Denton was the first law firm in the country to bring an ERISA excessive fee lawsuit involving a 403(b) plan. The firm also is the only law firm to have tried such a case. Schlichter, Bogard & Denton's steadfast perseverance to this case after adverse precedents is highly admirable and commendable. The Court would expect no less from this law firm based on its reputation as the foremost authority in ERISA excessive fee litigation. Without the unique and unparalleled foresight for this novel area of litigation by Schlichter, Bogard & Denton, the class would not have obtained any recovery for the alleged fiduciary breaches that affected the Johns Hopkins University 403(b) plan for years prior.

Over the last twelve years, Schlichter, Bogard & Denton has demonstrated an unequaled commitment and ability to represent employees and retirees to recover losses they suffered through the mismanagement of their retirement plans. District courts across the country have universally recognized the well-earned reputation and ability of Schlichter, Bogard & Denton. In this litigation, Schlichter, Bogard & Denton has thoroughly demonstrated why it is regarded as the "pioneer and the leader in the field of retirement plan litigation," *Abbott,* 2015 WL 4398475, at *1, and "experts in ERISA litigation", *Krueger,* 2015 WL 4246879, at *2 (citation omitted).

It is further undisputed that Schlichter, Bogard & Denton has greatly benefitted participants and beneficiaries of defined contribution plans through their devotion to this area of complex litigation. The firm has "educated plan administrators, the Department of Labor, the courts and retirement plan participants about the importance of monitoring recordkeeping fees." *Tussey v. ABB Inc.*, No. 06-4305, 2015 WL 8485265, at *6 (W.D.Mo. Dec. 9, 2015). As one district court emphasized, "the fee reduction attributed to Schlichter, Bogard & Denton's fee litigation and the Department of Labor's fee disclosure regulations approach $2.8 billion in annual savings for American workers and retirees." *Nolte,* 2013 WL 12242015, at *2 (internal citations omitted). The Court is convinced that the successful, efficient recovery for the class in this case was only obtained as a result of Schlichter, Bogard & Denton's record of success and risking substantial sums of money and investing thousands of hours of attorney time for the benefit of Johns Hopkins University employees and retirees. Schlichter, Bogard & Denton made this commitment to the class without any guarantee that any recovery in this new area of litigation was possible. It is important that Class Counsel not be penalized where its record of success produces an early settlement and a very favorable result for the class.

Class Counsel achieved an excellent result on behalf of the class. The result obtained is "the most critical factor in determining the reasonableness of a fee award" and further supports finding the requested fee reasonable. *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 247 (4th Cir. 2010) (internal quotation omitted). The risk of nonpayment in this complex area of the law is tremendous, particularly in light of multiple adverse precedents in similar 403(b) excessive fee lawsuits. *See, e.g., Cunningham v. Cornell Univ.*, 16-6525, 2019 WL 4735876 (S.D.N.Y. Sep. 27, 2019); *Divane v. Northwestern Univ.*, No. 16-8157, 2018 WL 2388118 (N.D.Ill. May 25, 2018); *Wilcox v. Georgetown Univ.*, No. 18-422, 2019 WL 132281 (D.D.C. Jan. 8, 2019); *Davis*

*v. Wash. Univ. in St. Louis*, No. 17-1641, 2018 WL 4684244 (E.D. Mo. Sept. 28, 2018); *see also Kruger*, 2016 WL 6769066, at *4 (noting adverse precedent).

In the history of ERISA 403(b) litigation, there has only been one trial. *Sacerdote v. New York Univ.*, 328 F.Supp.3d 273 (S.D.N.Y. 2018). This trial occurred in April 2018, which resulted in judgment in July 2018 in favor of New York University and against the plaintiffs. The district court's rejection of similar fiduciary breach claims therein further underscores the difficulties and challenges that Class Counsel faced in securing a successful recovery for the class.

Rather than "having to wait as long as a decade" before receiving any recovery, class members will receive compensation and be able to invest their proceeds immediately that adds more value to the settlement. *Kruger*, 2016 WL 6769066, at *5. Current participants will receive their distributions directly into their accounts tax deferred and former participants have the right to direct their distribution into a tax-deferred vehicle, such as an Individual Retirement Account. The Investment Company Institute estimates that the present value of the benefit of tax deferral for 20 years is an additional 18.6%,[3] and this Court adopts that value. This Court finds that the actual value to the class of the monetary portion of the settlement is $16,604,000, when this tax-deferred benefit is taken into account.

Although the $14 million monetary component alone would support the requested fee award, the Court must also consider the value of the non-monetary relief when evaluating the overall benefit to the class. *Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 481 (D.Md. 2014).

---

[3] Peter Brady, *Marginal Tax Rates and the Benefits of Tax Deferral,* Investment Company Institute, Sept. 17, 2013, http://www.ici.org/viewpoints/view_13_marginal_tax_and_deferral; *Abbott v. Lockheed Martin Corp.*, No. 06-701, Doc. 497 at 37 (ECF 47) (S.D.Ill. Apr. 14, 2015) (Report of the Special Master) (citing ICI report).

"Considering the non-monetary benefits and relief created by counsel's efforts is important because it encourages attorneys to obtain meaningful affirmative relief." *Kruger*, 2016 WL 6769066, at *3. The affirmative relief herein is extensive and provides substantial additional value to the class.

In particular, Defendant agreed to the following: (1) comply with the non-monetary terms for a three-year Settlement Period, during which time Plaintiffs' counsel will stay involved to monitor compliance with the settlement terms and bring an enforcement action if needed; (2) after the end of each year of the Settlement Period provide Plaintiffs' counsel a list of the Plan's investment options, fees charged by those investments, and a copy of the Investment Policy Statement (if any); (3) retain an independent consultant with expertise in designing investment structures for large defined contribution plans who will thereafter assist the fiduciaries in reviewing the Plan's existing investment structure and to develop a recommendation for the Plan's investment structure; (4) issue requests for proposals for recordkeeping and administrative services; (5) the independent consultant shall provide a recommendation to the Plan's fiduciaries regarding whether the Plan should use a single recordkeeper or more than one recordkeeper; (6) the Plan's fiduciaries shall provide to Plaintiffs' counsel the final bid amounts that were submitted in response to the request for proposals and shall identify the selected recordkeeper(s), which shall be accompanied by the final agreed upon contract(s); (7) contractually prohibit the Plan's recordkeeper(s) from soliciting current Plan participants for the purpose of cross-selling proprietary non-Plan products and services, including, but not limited to, Individual Retirement Accounts (IRAs), non-Plan managed account services, life or disability insurance, investment products, and wealth management services, unless a request is initiated by a Plan participant; and (8) provide Plan participants with a link to a webpage containing the fees and the 1-, 5-, and 10-

11

year historical performance of the frozen accounts and the investment options that are in the Plan's approved investment structure and the contact information for the individual or entity that can facilitate a fund transfer for participants who seek to transfer their investments in frozen annuity accounts to another fund in the Plan. Doc. 84-2 (§§10.1–10.13).

Class Counsel engaged Dr. Stewart Brown, a nationally recognized economist, to provide the Court with an estimate of the economic benefits that will be achieved by the above non-monetary relief. Dr. Brown determined that the reduction in recordkeeping fees through the competitive bidding process for recordkeeping services provides an additional benefit to the class of $18,162,738, with a present value of $16,605,872. The Court finds that Dr. Brown provides a reliable analysis of the estimated economic benefits the class will achieve through the settlement. As a result, the Court will consider these benefits included in the economic value of the common fund that Class Counsel created through their diligent efforts.

Taking into account the benefit of tax deferral and fee savings, the settlement is valued at $34,766,732. Thus, Class Counsel's requested fee is less than 7.45% of the total benefit to the class. This is a conservative estimate because it does not take into account additional benefits that are provided through other non-monetary terms.

### B. Lodestar Cross-Check

"Given that courts in the Fourth Circuit approve of the percentage-of-fund method for awarding fees in common fund cases, '[i]t is not necessary for the Court to conduct a lodestar analysis[.]'" *Kruger*, 2016 WL 6769066, at *4 (citation omitted). However, the Court conducted a lodestar cross-check to confirm that the percentage award is fair and reasonable by determining the hours reasonably expended and then multiplying that amount by the reasonable hourly rate. *Jones v. Dominion Res. Servs., Inc.*, 601 F.Supp.2d 756, 759 (S.D.W. Va. 2009) (collecting

12

cases). "The hourly rate should be in line with the market rate for 'similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Kruger*, 2016 WL 6769066, at *4 (citation omitted). The Court does not need to "'exhaustively scrutinize[ ]' the hours documented by counsel and 'the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case.'" *Krakauer*, 2018 WL 6305785, at *5 (*quoting Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)).

As courts have repeatedly recognized, complex ERISA class action litigation, such as this, involves a national market, particularly given that no attorney or law firm ever filed an excessive fee ERISA case before Class Counsel. The Court therefore finds that the relevant market rate for cases such as this is a nationwide market rate. This is consistent with the findings of numerous other district courts in similar excessive fee cases handled by Class Counsel. *Kruger*, 2016 WL 6769066, at *4 (collecting cases).

Class Counsel Schlichter, Bogard & Denton has spent approximately 2,566.10 hours of attorney time and 249.60 hours of non-attorney time on this matter to date. Based on the documentation submitted by Class Counsel, the Court finds that the time spent by Class Counsel on the case is reasonable considering the complexity and number of contested issues throughout the litigation.

The Court approves the following hourly rates for Schlichter, Bogard & Denton: for attorneys with at least 25 years of experience, $1,060 per hour; for attorneys with 15–24 years of experience, $900 per hour; for attorneys with 5–14 years of experience, $650 per hour; for attorneys with 2–4 years of experience, $490 per hour; and for Paralegals and Law Clerks, $330 per hour. Within the last several months, Class Counsel's reasonable hourly rates were approved by district courts in similar ERISA class action litigation, including courts in this circuit. *Cassell*

13

*v. Vanderbilt Univ.*, No. 16-2086, Doc. 174 at 3 (M.D. Tenn. Oct. 22, 2019); *Clark*, 2019 WL
2579201, at *4; *Sims*, 2019 WL 1993519, at *3.

These reasonable hourly rates were independently verified by a recognized expert in
attorney fee litigation who opined that Class Counsel's requested rates were reasonable based on
rates charged by national attorneys of equivalent experience, skill, and expertise in complex class
action litigation. *Ramsey*, Doc. 27, at 9 (S.D. Ill. Oct. 15, 2018) (*citing* Declaration of Sanford
Rosen [Doc. 21-3 ¶52]). These rates reflect a modest increase (3% annually) from those
previously approved for Class Counsel in 2016. *Kruger*, 2016 WL 6769066, at *4 (applying rates
from *Spano*); *Ramsey*, Doc. 27 at 8 n. 4 (applying increased rates from *Spano*). In light of the
close similarities between the fiduciary breach claims in these cases and this one, Class Counsel
being the same, and the recency of the decisions, the Court finds that these hourly rates are
reasonable for the services provided.

Using the approved rates set forth above, the lodestar is $1,907,379. The requested fee
would result in a lodestar multiplier of 2.45—well within the range routinely approved in this
Circuit. *Freckleton v. Target Corp.*, No. 14-cv-00807, Doc. 145-1 at 22, 149 (D.Md. Dec. 11,
2017) (approving attorneys' fee award with a lodestar multiplier of 3.5); *Kruger*, 2015 WL
6769066, at *5 (approving 3.69 lodestar multiplier in similar ERISA case and noting that courts
have routinely approved multipliers of 4.5 or higher); *Deloach v. Philip Morris Co.*, No. 00-
1235, 2003 WL 23094907, at *11 (M.D.N.C. Dec. 19, 2003) (approving 4.45 lodestar
multiplier); *Dechoen*, 299 F.R.D. at 483 (approving 3.5 lodestar multiplier). Given the
substantial risks involved in ERISA excessive fee cases, a risk multiplier is appropriate for this
case. This demonstrates the reasonableness of the requested fee award.

## II.   Expenses

Under Rule 23(h), a trial court may award nontaxable costs that are authorized by law or the parties' agreement. Fed. R. Civ. P. 23(h). A cost award is authorized by both the parties' settlement agreement and the common fund doctrine. Doc. 84-2 at 3, 22 (§§2.4, 7.1); *Kruger,* 2016 WL 6769066, at *6. "Reimbursement of reasonable costs and expenses to counsel who create a common fund is both necessary and routine." *Savani v. URS Prof'l Solutions LLC,* 121 F.Supp.3d 564, 576 (D.S.C. 2015). "The prevailing view is that expenses are awarded in addition to the fee percentage." *Krispy Kreme,* 2007 WL 119157, at *3 (citation and internal quotation marks omitted). Reimbursable expenses include court costs, transcripts, travel, contractual personnel, document duplication, expert witness fees, photocopying, long distance telephone charges, postal fees, and expert witness fees. *In re Mid-Atlantic Toyota Antitrust Litig.,* 605 F. Supp. 440, 448 (D. Md. 1984). Here, Class Counsel requests reimbursement of expenses in the amount of $53,539.78. The requested expenses are all for legitimate costs associated with prosecuting the case and the amounts are reasonable. The Court finds that Class Counsel's request is fair and reasonable and will approve it.

## III.   Class Representatives

"As part of a class action settlement, named plaintiffs are eligible for reasonable incentive payments." *Decohen,* 299 F.R.D. at 483 (internal citations and quotations omitted). "A substantial incentive award is appropriate in [a] complex ERISA case given the benefits accruing to the entire class in part resulting from [named plaintiff's] efforts." *Savani v. URS Prof'l Solutions LLC,* 121 F.Supp.3d 564, 577 (D.S.C. 2015). Here, Class Counsel requests a case contribution award of $20,000 each for Class Representative. The class representatives provided invaluable assistance to Class Counsel in prosecuting the case. They also risked their reputation

and alienation from employers or peers "in bringing an action against a prominent company [university] in their community." *Kruger,* 2016 WL 6769066, at *6.

The Court finds that the requested case contribution award for the class representatives is reasonable and appropriate given their contributions to the action. This amount is consistent with awards in similar excessive fee settlements. *See Kruger,* 2016 WL 6769066, at *6 (collecting cases awarding $25,000 to each named plaintiff).

It is **ORDERED** that:

1. Class Counsel's motion for attorneys' fees, reimbursement of expenses, and case contribution awards for named plaintiffs is **GRANTED**.

2. The Court awards Class Counsel an attorney's fee of $4,666,667, to be paid from the settlement amount.

3. The Court awards Class Counsel expenses of $53,539.78, which are to be paid from the settlement amount.

4. The Court awards a case contribution award of $20,000 each for Class Representatives Margaret E. Kelly, Katrina Allen, Jeremiah M. Daley, Jr., Treva N. Boney, Tracy L. McCracken, Jerrell Baker, Lourdes Cordero, and Francine Lampros-Klein, also to be paid from the settlement amount.

This is the 28th day of January, 2020.

_____

UNITED STATES DISTRICT JUDGE